In the Matter of the Claim of HOWARD HUMPHREY, Appellant, against TIETJEN & STEFFIN MILK CO., INC., and Another, Respondents.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 26, 1932.

*R. S. & Smith Johnson* [*R. S. Johnson* of counsel], for the appellant.

*John J. Bennett, Jr.*, Attorney-General, for the State Industrial Board.

McNAMEE, J. The claimant and one Asaro were employed by the defendant Tietjen & Steffin Milk Co., Inc., in a branch of its milk factory in Newport, N. Y., the latter employee as a fireman in charge of the boiler room, and the former as a man of all work about the plant. It was the common practice of the men working in the plant to eat their lunch in the boiler room, and the only toilet provided for their use was also in the same room. The personal relations between the claimant and Asaro were uninterruptedly sociable over a period of years. As a part of his lunch the claimant brought to the boiler room on June 18, 1930, some bottles of a soft drink called " pop." After lunch on that day the claimant placed these empty pop bottles near his dinner pail in the boiler room and returned to his duties. At the close of his work that day he again came to the boiler room for his dinner pail and bottles, and found that the bottles had been broken by Asaro and thrown on the coal

pile. When questioned good naturedly about this destruction and asked not to repeat it, Asaro told the claimant he would destroy any bottles left in the boiler room. Some bantering words followed, whereupon Asaro became angry, and said to claimant, " I will cut the liver right out of you," and then proceeded to the office of the superintendent and complained about the claimant. The superintendent then came to the boiler room to discuss the matter, and finally said to the claimant and Asaro in substance, " Let the thing go, go on with your work and I will tend to it; " and he told claimant not to go to the boiler room any more, which direction was obeyed. There is no dispute about these facts.

ᴵ It was also brought out in the testimony of the claimant, on questions put by counsel for the insurance company, that a fellow-workman heard Asaro telling the superintendent, at two o'clock in the afternoon of the following day, June nineteenth, that claimant " had to be through, or he was [through] that night." Of course, this testimony was hearsay, but was admissible, was not objected to, and was not disputed. It was treated by the parties as a statement of fact, and accordingly was not without significance in this proceeding. (Workmen's Comp. Law, § 118; *Hernon* v. *Holahan,* 182 App. Div. 126, 128; *Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435, 440.) What response the superintendent made to this warning or threat does not appear.

Later in the same afternoon Asaro left the boiler room and went to the place in the plant where claimant was engaged in his work, and without other cause or explanation shot him twice, and thereby inflicted the injuries in question. Neither the insurance company nor the employer presented any proof, and submitted the case on the evidence of the claimant. The Industrial Board has found that the injuries were received *in the course* of the employment, but that they did not arise *out of* the employment, but, on the contrary, did arise from " ill-feeling occasioned by an argument * * * over the destruction * * * of certain soda bottles, the personal property of the claimant, and was not the result of anything connected with the employment; " and accordingly decided that the claim does not come within the provisions of the act.

Upon these facts, shown by evidence that is credible, unimpeached and uncontradicted, a question of law only is presented. And when an injury is sustained in the course of the employment it will be presumed as a matter of law that it did arise out of the employment, in the absence of substantial evidence to the contrary. (Workmen's Comp. Law, § 21; *McQueeney* v. *Sutphen & Myer*, 167 App. Div. 528.)

We are unable to discover any evidence to overcome this pre-

sumption, even though it did not appear otherwise from the record that the accident arose out of the employment; and we believe it does so appear. The exigencies of claimant's employment were such as to require him to carry his lunch to the milk factory and eat it there. The claimant had no fixed place of employment in the plant; and it was necessary that he have some suitable place for eating and for depositing his lunch receptacles, especially in bad weather — if not in the boiler room then in some other part of the plant. In such factories the boiler room is a warm and comfortable place, and this was the room provided and used for that purpose, as a matter of common practice and with the apparent consent of the employer. It does not appear that the boilerman took any offense at eating in the boiler room, or because the dinner pails were deposited there; his peculiar aversion appears to have been for pop bottles. And clearly the claimant had no reason to believe that one container in which he carried his lunch would be a cause of offense any more than another. Claimant's good-natured protest against the destruction of the bottles was quite as justifiable as though the boilerman had seen fit to destroy his dinner pail or his overcoat. In other words, the claimant did not initiate any quarrel between himself and his erstwhile friend. In these circumstances the use of the boiler room, as indicated, was clearly an incident of claimant's employment; and from this use, and the exercise of claimant's privilege as an employee, the disagreement arose.

And again, the record discloses that Asaro had complained to the superintendent and argued with him over this matter, apparently about " cluttering " the boiler room with bottles, and had even threatened to leave his employment if the claimant were not discharged. The superintendent entered into the discussions and promised to give the matter his attention. There is no suggestion in the record that the superintendent was acting as an intermediary between parties who were contending over a purely personal matter, but gave such orders and promised such attention in the circumstances as might be expected from one in authority. Asaro declined to associate longer with claimant as a fellow-employee; and because he was to continue working there Asaro shot him. It is quite evident that if the superintendent had discharged the claimant, this accident would not have occurred; and it is a reasonable inference that the shooting took place because the superintendent was unwilling to accede to the boilerman's demands touching claimant's employment in the factory. Because of his employment, and while engaged in his duties, he was shot. Thus in either line of reasoning the conclusion cannot be avoided that the accident arose *out of* the employment. This case appears to be well within the controlling

decisions. (*Knocks* v. *Metal Packing Corp.*, 231 N. Y. 78; *Verschleiser* v. *Stern & Son*, 229 id. 192, 194, 197, 198; *Sassano* v. *Paino*, 226 id. 699; *Carbone* v. *Loft*, 219 id. 579; *Heitz* v. *Ruppert*, 218 id. 148, 151, 153.)

It is recommended that the decision of the State Industrial Board be reversed, and the claim remitted for further hearing, with costs.

All concur, except VAN KIRK, P. J., and HINMAN, J., who dissent and vote for affirmance on the authority of *Heitz* v. *Ruppert* (218 N. Y. 148, 152); *Kowalek* v. *N. Y. Consolidated R. R. Co.* (229 id. 489, 492); *De Filippis* v. *Falkenberg* (170 App. Div. 153; affd., 219 N. Y. 581); *Scholtzhauer* v. *C. & L. Lunch Co.* (233 id. 12).

Decision reversed and claim remitted, with costs against the State Industrial Board to abide the event.