## WILLIAM SPENCER *v.* CHESAPEAKE PAPER-BOARD CO., ET AL.

[No. 138, October Term, 1945.]

*Decided May 17, 1946.*

524

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Albert A. Levin* and *Robert E. Coughlan, Jr.,* for the
appellant.

*Rignal W. Baldwin* and *David R. Owen,* with whom
were *Semmes, Bowen & Semmes* on the brief, for the
appellees.

DELAPLAINE, J., delivered the opinion of the Court.

William Spencer, of Baltimore, a laborer, forty-five
years old, is claiming workmen's compensation for burns
received by him in the factory of Chesapeake Paper-
board Company on the morning of December 2, 1944.
His claim was disallowed by the State Industrial Acci-
dent Commission on the ground that his injuries did not
arise out of and in the course of his employment. When
his case was heard on appeal in the Superior Court of
Baltimore City, the jury found that the injuries did arise
out of and in the course of his employment; but the trial
judge entered judgment *n. o. v* in favor of the employer
and its insurer, Ætna Casualty and Surety Company.

When claimant reported at the factory on December
1, 1944 at 7 P. M., he was put to work at a finishing
machine, but several hours later was transferred to a
beater machine, where several other men were working.
He testified in the court below that after the beater was
filled he would rest, and occasionally doze off in the dry-
ing room, where it was warm, before returning to refill
it. After midnight he sat on a box, and later lay down
on some paper, in the drying room about 100 feet away.
The superintendent testified that claimant did not fill

the beater more than once and disappeared after 1 A. M., while the assistant superintendent testified that he could not recall where claimant was after midnight; but claimant testified that he helped to fill the beater approximately fifteen times after midnight, and that when he sat down in the dryer room to rest for the last time about 5, he fell asleep, and was waked up by his pants being on fire about 5:30. It is conceded that he did not take off his working clothes until 6, and that he punched the clock card at 6:45.

The Workmen's Compensation Act of Maryland provides for the payment of compensation for disability or death of an employee resulting from an accidental personal injury arising out of and in the course of his employment without regard to fault as a cause of the injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or another, or where the injury results solely from the intoxication of the injured employee while on duty. Code, 1939, Art. 101, Sec. 14. The Act expressly provides that no employee or dependent of an employee shall be entitled to receive any compensation on account of any injury to, or death of, an employee caused by self-inflicted injury, the wilful misconduct, or where the injury or death resulted solely from the intoxication of the injured employee. Code, 1939, Art. 101, Sec. 58. We hold that an injury to an employee arises out of his employment if it results from the nature, conditions, obligations, or incidents of the employment. Whether an accident is so related or incident to the employment depends upon the circumstances of each particular case. No exact formula can be laid down which will automatically solve every case. *Baltimore Dry Docks & Shipbuilding Co. v. Webster,* 139 Md. 616, 626, 116 A. 842; *State Roads Commission v. Reynolds,* 164 Md. 539, 546, 165 A. 475; *Cudahy Packing Co. of Nebraska v. Parramore,* 262 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366. Upon the hearing of an appeal from a decision of the State Industrial Accident Commission, the court, upon

motion of either party, is required to submit to a jury the question of fact involved in the case. Code, 1939, Art. 101, Sec. 70. When any case is tried before a jury on appeal from a decision of the Commission, it is for the jury to determine the question of fact presented, and the trial judge has no right to control the exercise of the jury's function to weigh the credibility of the evidence. *Jewel Tea Co. v. Weber*, 132 Md. 178, 182, 103 A. 476. The trial judge, in determining whether a verdict should be directed in favor of the employer on such an appeal, must assume the truth of the evidence presented by the claimant. *Bethlehem Steel Co. v. De Mario*, 164 Md. 272, 277, 164 A. 748. On the present appeal from the trial court, the Court of Appeals has no occasion to decide whether the injury sustained by the employee arose out of and in the course of his employment; our duty is merely to decide whether it was proper for the trial judge, upon the evidence presented, to submit the question to the jury for their decision. *Todd v. Easton Furniture Mfg. Co.*, 147 Md. 352, 359, 128 A. 42.

The law is entirely clear that an employee's injury may arise out of and in the course of his employment although he may not be actually working at the time, if he is exposed to risks which are incident to the doing of the employer's work. *Boteler v. Gardiner-Buick Co.*, 164 Md. 478, 165 A. 611. For instance, in *Southern Can Co. v. Sachs*, 149 Md. 562, 131 A. 760, where an employee in a factory in Baltimore was found unconscious at the bottom of the stairway to the second floor of the factory, the court held that, although when last seen he was resting in a room on the second floor, where employees were not ordinarily permitted to go, the question whether the accident arose out of and in the course of his employment was for the jury, because he might have gone to the second floor for a proper purpose and he could not have returned to his work except by using the stairway. Likewise, in the case of the Globe Newspaper Company, of Boston, where it was the custom of the employees to leave the composing room in hot weather to go on

the roof for fresh air, and one of the compositors fell off the roof, the Massachusetts Supreme Judicial Court held that the evidence warranted the finding that he was within the course of his employment, though not actually working at the time. *In re Von Ette,* 223 Mass. 56, 111 N. E. 696. So, in the present case, if there was no objection on the part of the employer when the employee rested, during the time when the beater was not being filled, these intervals of rest may be considered incidental to the employment and insufficient to establish a termination of the employment.

It was vigorously urged that, because it was not known how the fire originated, the evidence was too speculative to support the claim. But an injured employee, in order to sustain his claim for compensation, is not required by the Act to prove the exact cause that produced his injury. *In re Bean,* 227 Mass. 558, 116 N. E. 826. Nor does the Act demand that proof of accidental injury shall be established by the testimony of eyewitnesses. The burden of proof may be sustained by inferences having a substantial basis in circumstantial evidence. *In re Von Ette,* 223 Mass. 56, 111 N. E. 696, 697. Of course, the question whether an employee's injury arose out of and in the course of his employment cannot be left to mere conjecture. In *Robertson v. North American Refractories Co.,* 169 Md. 187, 181 A. 223, where the fireman of a brick kiln was found dead in front of the kiln with small burns on his head and one hand, the trial judge properly directed a verdict for the employer, in view of the fact that the workman's death was the result of a heart attack and there was no evidence to show that the heart attack was cause by the burns. However, an injury to an employee may be said to arise out of his employment if there is such a causal connection between the employment and the injury that it may rationally be inferred that the employment caused the injury. *State Roads Commission v. Reynolds,* 164 Md. 539, 549, 165 A. 475; *Ervin v. Industrial Commission,* 364 Ill. 56, 4 N. E. 2d 22. Thus, in *Baltimore Towage Co. v.*

*Shenton,* 175 Md. 30, 199 A. 806, where a truck driver, who was waiting on a pier for his truck to be loaded, fell into the water and was drowned, it was held that, although there was no evidence to show how he fell into the water, the evidence was sufficient to warrant a finding that the drowning resulted from an accident arising out of and in the course of his employment, because the drowning would not have occurred if he had not been required by his employment to be on the pier.

In the case before us it is not certain whether the accidental injury was caused by (1) electric current, (2) lighted cigarette, or (3) practical joke. In either event, however, the workman's injury may have arisen out of his employment. First, if we assume that the fire originated from electric current, then the injury arose directly out of the nature and conditions of the employment. Or, if we assume that the fire was caused by a lighted cigarette, then the injury may have arisen from an incident of the employment. It is recognized that there are many occasions where the employer must expect the employee to resort to the use of tobacco as a common adjunct to the discharge of his employment. *Puffin v. General Electric Co.,* 132 Conn. 279, 43 A. 2d 746; *Dzikowska v. Superior Steel Co.,* 259 Pa. 578, 103 A. 351, L. R. A. 1918F, 888. As the Supreme Court of California said during the first World War: "Tobacco is universally recognized to be a solace to him who uses it, and it may be that such a one, unless he finally shakes off the habit, cannot perform the labors of his life as well without it as with it. In the present war one of the constantly recurring calls upon the public of the world is for tobacco for the comfort of the participants in the conflict." *Whiting-Mead Commercial Co. v. Industrial Accident Commission,* 178 Cal. 505, 173 P. 1105, 1106, 5 A. L. R. 1518. Finally, if we assume that claimant's injury was the result of a prank, it may still have arisen out of the employment. It is true that if a workman steps aside from his employment and initiates horseplay, he is precluded from recovering workmen's com-

pensation for the consequences. *Hill v. Liberty Motor &
Engineering Corporation*, 185 Md. 596, 45 A. 2d 467. But
in this case the workman obviously did not provoke horse-
play, for he was asleep at the time. He had the right
to expect that no unusual conditions, known to his em-
ployer and suffered to exist, surrounded his employ-
ment so as to render it more hazardous than was appar-
ent to the ordinary observer. At the trial of this case
Jacob E. Alderton, assistant superintendent of the
paperboard factory, who has been with the company
more than ten years, admitted that he had knowledge
that practical jokes of a dangerous nature, such as "hot
foot," had been perpetrated in the past by employees
at the factory, although the victims had not been burned
as severly as the claimant in this case. Unquestionably,
if such a dangerous practice was known by the officials
of the company, it was their duty to put a stop to the
practice. Where an employer knows that horseplay or
practical joking has occurred, but fails to prevent its
recurrence, so that subsequent injury resulting therefrom
may be said to have followed as a natural incident of the
work, and to have been such as would have been con-
templated by a person of reasonable intelligence, then
the injury may be held to have arisen out of the employ-
ment. *Glenn v. Reynolds Spring Co.*, 225 Mich. 693,
196 N. W. 617, 36 A. L. R. 1464; *Petersen's Case*, 138 Me.
289, 25 A. 2d 240.

It is, therefore, our opinion that the evidence in this
case was sufficient to justify submission of the issue to
the jury, and that the jury had the right to answer the
issue in favor of the employee, even though he rested at
intervals while on duty at the employer's factory.

*Judgment reversed, and judgment entered
reversing the decision of the State In-
dustrial Accident Commission, with
costs to appellant.*