EVELYN RICE *v.* REVERE COPPER AND BRASS, INC.

[No. 131, October Term, 1945.]

*Decided June 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Maurice J. Pressman,* with whom was *Julius Robinson* on the brief, for the appellant.

*Robert E. Coughlan, Jr.,* and *Paul M. Higinbothom* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Leo Rice, the husband of the claimant in this case, died as a result of a blow from a shovel, wielded by a fellow-employee, Tressie Skeeter, which fractured his skull. The widow's claim was disallowed by the State Industrial Accident Commission. On appeal, the case

was heard by the Court, without a jury, in the Superior Court of Baltimore City, upon the record taken before the Commission. From its action affirming the Commission the case comes here.

Rice and Skeeter both worked for Revere Copper and Brass, Inc. upon the same shift, from 3 P. M. to 11 P. M., but they did not work together, or in the same gang. Rice was a floorman, or general utility man, and was usually assigned his duties for the particular day when he reported for work. Skeeter's work was in the other end of the building. There was no testimony as to when or where Rice and Skeeter became acquainted. Rice had worked for the Company for about a year prior to his injury.

On August 11, 1944, Rice reported for work and punched the time clock at 2:37 P. M. There was undisputed testimony that employees on the incoming shift were allowed to punch the clock at any time after 2:35 P. M. Rice went to the locker-room, changed his clothes, and entered No. 2 sheet mill, standing some 25 feet from the entrance by the office. An automatic vending machine containing soft drinks stood nearby. Men of the working shift were not far away. The shifts changed at 3 P. M. when the whistle blew. The injury occurred at about 2:55 P. M. according to the testimony of several witnesses. (The death certificate gave the time as 3 P. M.).

Sisson, on the incoming shift, "saw Rice walk over about thirty-five or forty feet from me alongside of a flat car, that had some copper on it, and standing there with his back to the soda dispenser. * * * This man Skeeter had a shovel and had it raised up and he walked out and hit this fellow Rice in the back of the head." The witness testified he was not near enough to hear what words, if any, were spoken.

Brown, on the outgoing shift, operated a scale about 18 feet from where Rice was standing. He was about 6 feet from the scale waiting for the whistle, and about 12 feet from Rice when he was struck. He testified:

"He was standing there and talking, he and another fellow, and Skeeter walks up with a shovel in his hand and the man fell, and that is all there was to it, and that is all I know. Q. So far as you could see had Rice done anything to this fellow when hit? A. No, just walked up and hit him. * * * There wasn't anything said at all."

Henderson, on the incoming shift, testified that he was talking to Rice. "I just don't remember what we were talking about but anyway he came out of the locker room and came by the car where I was standing and stopped there talking to me, and it wasn't long before Skeeter came out, like he came out of the locker room, and there was a fountain, soda water fountain sitting over there, so Skeeter came out and there was a shovel laying over there and he went over and picked the shovel up and this boy had his back to him and I saw him when he picked the shovel up and I thought maybe he was going to work, and he walked over and hit him in the back of the head. * * * He just came out and picked up a shovel and hit him. He didn't say anything to him at all."

Rice died on August 18, 1944, from the effects of the blow. Before he died he told the Assistant Personnel Manager, Gilbert, that "he had not been in a fight." Skeeter was indicted and plead guilty to manslaughter. He was sentenced to five years in the penitentiary from whence he was brought to testify before the Commission. His story was that Rice had cursed him and threatened to strike him with a soft-drink bottle at the time the blow was struck. He testified that Rice had rented a room in Skeeter's house, and spent the night there, on Sunday, August 6, with a girl; a few days later, Rice brought around another girl whom he claimed was his wife, but Skeeter told him he "didn't want that kind of stuff there." He let the first girl remain, but told Rice and his wife to go. However, the first girl left after two days. Skeeter was asked: Q. "Did you and Rice ever have any trouble about your work down there, at all, one way or another? A. No, Ma'am. Q. The

only trouble was about this situation over at the house? A. Yes, Ma'am."

While there is no corroboration of Skeeter's story that Rice initiated the altercation in the factory, there is testimony to support his statement that animosity existed, and arose from a quarrel about the room. Cooper, a fellow employee, testified that there was "bad blood" between them; that Skeeter told him a day or so before the fatal striking that Rice had asked Skeeter "to rent a room for him and his girl friend." Moreover, the claimant herself testified that she had been separated from her husband for some time immediately prior to his injury. She testified that she knew Skeeter, and that her husband had a room with him. "He didn't live there. He took the girl and carried her to the house. * * * She wasn't his wife." She also testified that she and Rice only became reconciled the morning of his injury. This latter statement was corroborated by a witness, Frances Barksdale.

The trial court found that Rice was injured in the course of his employment, and in this we fully agree. "The words * * * [of the Statute, Code, Art. 101, Sec. 14] 'out of,' refer to the cause or origin of the accident, while 'in the course of' refer to the time, place, and circumstances under which it occurs." *Hill v. Liberty Motor and Engineering Corporation,* 185 Md. 596, 605, 45 A. 2d 467, 471. "The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose." *Cudahy Packing Co., of Nebraska v. Parramore,* 263 U. S. 418, 426, 44 S. Ct. 155, 68 L. Ed. 366. "It is important and necessary that all employees be on time for their various avocations. It is one of the essential qualifications of a good employee. A good employee is always a prompt employee." *Bristow v. Department of Labor,* 139 Wash. 247, 246 P. 573, 574. See also *Field v. Charmette Knitted Fabric Co.,* 245 N. Y. 139, 156 N. E. 642; *Spencer v. Chesapeake Paper Board Co.,* 186 Md. 522,

47 A. 2d 385, and cases there cited. We hold that an employee is in the course of his employment where he is injured before the hour of work while on the premises for the purpose of engaging in the day's work. No implication to the contrary is to be drawn from *Hill v. Liberty Motor & Engineering Co., supra,* as clearly appears from the supplemental statement filed upon motion for reargument in that case.

The trial court denied recovery in the instant case on the ground that Rice was the aggressor, *i. e.,* that he initiated and participated in a fight that led to the fatal blow. Weighing the evidence, as we must in this appeal, we are unable to accept this view. Skeeter's version of the case was not corroborated, and was flatly contradicted by the three eye-witnesses, and by the decedent. Skeeter was clearly not an impartial witness, and his version is inherently improbable, if we accept the undisputed testimony that Rice was hit in the back of the head. The trial court did not see the witnesses, as the case was heard upon the record made before the Commission. We think the weight of the evidence indicates that the fatal blow was not caused by Rice's conduct upon the employer's premises, but grew out of a personal difference unrelated to the work.

The crucial question is whether the injury "arose out of" the employment. Rice did not "step aside from his employment," as in the Hill case, *supra,* but it is still necessary to find a causal connection between the employment and the injury. "The mere fact that the work caused his association with the other man is not sufficient." *Hill v. Liberty Motor & Engineering Co.,* 185 Md. 613, 47 A. 2d 43; *Perdue v. Brittingham,* 186 Md. 393, 47 A. 2d 491, and cases cited.

We think the injury in the instant case was not attributable to the working environment. The weight of the evidence points to an antecedent quarrel, unrelated to the work, as the primary cause of the injury. To this extent, the case is on all fours with *Todd v. Easton Furniture Co.,* 147 Md. 352, 128 A. 42. In that case a

night watchman was shot and killed by an assailant with whom the decedent had had a quarrel over a dog. The assailant was not a fellow employee, but this court allowed recovery on the theory that although the antecedent quarrel, unrelated to the work, was the proximate cause, the decedent was peculiarly exposed to this kind of injury on account of the nature of his duties, and this exposure was a contributing cause. As stated in the recent case of *Perdue v. Brittingham*, 186 Md. 393, 47 A. 2d 491, 496, death (in the Todd case) "did arise out of his employment, because the special danger of his work tends to leave him naked to his enemies." In the instant case there were no unusual conditions of the employment that could fairly be said to contribute to the injury as a natural result. Compare *Baltimore Towage Co. v. Shenton,* 175 Md. 30, 35, 199 A. 806.

What we conceive to be the true line of distinction is illustrated by a number of cases in the New York courts. In *Leonbruno v. Champlain Silk Mills*, 229 N. Y. 470, 472, 128 N. E. 711, Cardozo, J., said: "The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. * * * Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service." In that case recovery was allowed where the claimant was struck in the eye by an apple thrown in sport by a fellow-employee at another employee. Compare *Spencer v. Chesapeake Paper Board Co.*, 186 Md. 522, 47 A. 2d 385, *supra.* Earlier cases, in which the claimants had "stepped aside" from their employment, were distinguished. In the case of *Scholtzhauer v. C. & L. Lunch Co.*, 233 N. Y. 12, 134 N. E. 701, where a waitress was shot and killed at her work by a co-employee, a dish-washer, because she refused his invitation to go out with him, it was held that the death did not arise out of the employment. In *DeClemte v. N. Y. State Rys.*, 246 App. Div. 649, 283 N. Y. S. 199, where the shooting grew out of attentions paid the assailant's wife,

recovery was denied. But in *Katz v. Reisman Rothman Corp.*, 261 App. Div. 862, 24 N. Y. S. 2d 807, the Appellate Division allowed recovery for an assault due to jealousy by one employee of the attentions of a second employee paid to a female co-employee. Apparently the court found that the injury was a natural result of association in the work, or at all events "something reasonably to be expected." In *Humphrey v. Tietjen & Steffin Milk Co.*, 235 App. Div. 470, 257 N. Y. S. 768 (affirmed without opinion in 261 N. Y. 549, 185 N. E. 733), the shooting grew out of a quarrel over the destruction of pop bottles left by the assailant in the boiler-room where the claimant was in charge. Recovery was allowed. Similarly, in *Verschleiser v. Jos. Stern & Son*, 229 N. Y. 192, 128 N. E. 126, 128, where the claimant, resenting a blow from a piece of meat, struck another employee believed to be the assailant, who in turn kicked and injured the claimant, recovery was allowed. The court said: "The injury was the result of provocation and passion engendered between employees in the course of their employment on the premises of the employer while engaged in their daily work." Compare *Boteler v. Gardiner-Buick Co.*, 164 Md. 478, 165 A. 611

The assault in the instant case was not due to an emotional flare-up generated by friction inseparable from the working conditions, nor was the opportunity for revenge enhanced thereby. We hold that the mere relationship of co-employment, plus the fact that the blow was delivered with an implement belonging to the employer, are not sufficient to establish either a primary or contributing causal connection between the working environment and the injury. The bare fact that work brings the parties together is not enough, where the primary cause is unrelated to the work and there are no special conditions that measurably enhance the risk of injury by assault.

*Judgment affirmed, with costs.*