932 A.2d 1213

**Dave Shawn JENNIFER**

v.

**STATE of Maryland, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, and Division of Correction.**

**No. 426 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 26, 2007.

Michael L. Sandul, Odenton, for Appellant.

Michael O. Doyle (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: KRAUSER, WOODWARD, and WILLIAM W. WENNER (Ret., specially assigned), JJ.

KRAUSER, Judge.

While working in the kitchen of the Central Laundry Facility of the Maryland Division of Correction, prison inmate Dave Shawn Jennifer was attacked and injured by fellow prisoner and co-worker, Stanley B. Taylor. Jennifer brought an action in the Circuit Court for Baltimore City against Taylor for battery and intentional infliction of emotional distress, and

against the State of Maryland [1] for violations of Article 25 of the Maryland Declaration of Rights, but his suit proved unavailing. Holding that Jennifer's exclusive remedy against the State lay with the Sundry Claims Board, the circuit court granted summary judgment in favor of the State and thereafter entered a default judgment against Taylor.

On appeal, Jennifer claims that the circuit court erred in granting summary judgment because his injury neither "arose out of his employment" nor was "accidental": two conditions that must be met, he insists, before Sundry Claims Board review can be obtained. Because we find that Jennifer's injury did indeed arise out of his employment, and because we conclude that the Board's jurisdiction is not limited to injuries that are "accidental," at least as that term is interpreted by Jennifer,[2] but includes injuries caused by the willful acts of third parties, we hold that Jennifer's exclusive remedy lies with the Sundry Claims Board. Accordingly, we shall affirm the judgment of the circuit court.

## Background

On August 23, 2002, Jennifer was working in the Central Laundry Facility with fellow inmate Stanley B. Taylor, where he received a wage for the work he performed.[3] On that August day, Jennifer asked the dietary officer on duty in the kitchen for permission to have a hamburger. The officer agreed and directed Taylor to serve Jennifer the food he requested. But Taylor refused and, according to Jennifer's

---

1. In suing the State of Maryland, Jennifer specifically named the Department of Public Safety and Correctional Services and the Division of Correction.

2. Jennifer suggests that "accidental" should be defined narrowly so that it excludes injuries caused by the willful acts of third parties. But, as we shall later discuss, this term has been defined in other statutory contexts, notably the Workers' Compensation Act, to include such injuries.

3. Jennifer was paid $.95 per day for his work, according to the affidavit of Pamela Sorenson, facility administrator and custodian of records of the Central Laundry Facility of the Maryland Division of Correction.

complaint, "[a] heated argument" erupted between Taylor and the officer. It ended when Taylor stated that "he would rather throw [the hamburger] on the floor than give it to [Jennifer]," and then proceeded to do precisely that. The officer then ordered Taylor to leave the kitchen.

The next day, Taylor was again assigned to work in the kitchen. Although the two prisoners were placed in different areas of the kitchen and given separate duties, at some point Taylor "approached [Jennifer] from behind, holding a large spatula used to stir large pots" and struck him in the head with it.

Taylor was, at that time, according to Jennifer's complaint, "under care by [the State] for mental health problems ... related to [his] violent disposition," but had, at that point, exhausted the medication he was taking for that condition. "Despite requests to [prison officials] for additional medicine," none, the complaint averred, was provided.

### Discussion

Jennifer contends that the circuit court erred in holding that his sole remedy against the State lay with the Sundry Claims Board ("the Board") and, on that basis, entering summary judgment for the State.

Because this case was disposed of on a motion for summary judgment, our task would normally be to " 'determine if there is a genuine dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.' " *Goldstein v. Miles*, 159 Md.App. 403, 422, 859 A.2d 313 (2004) (quoting *Crews v. Hollenbach*, 126 Md.App. 609, 624, 730 A.2d 742 (1999), *aff'd*, 358 Md. 627, 751 A.2d 481 (2000)). But, since neither party alleges that there are any material facts in dispute, we confine our review of that motion to "whether summary judgment was correctly entered as a matter of law," *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 450–451, 910 A.2d 1072 (2006) (citing *Ross v. State Bd. of Elections*, 387 Md. 649, 658, 876 A.2d 692, (2005); *Todd v. MTA*, 373 Md. 149, 154, 816 A.2d 930 (2003); *Beyer v. Morgan State Univ.*, 369

Md. 335, 359, 800 A.2d 707 (2002)), that is, " 'whether the trial court was legally correct' " in granting summary judgment. *Messing v. Bank of Am., N.A.,* 143 Md.App. 1, 10, 792 A.2d 312 (2002) (quoting *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990)). We conclude that it was.

The Sundry Claims Board Act[4] ("SCBA") provides that the compensation authorized by that act is the "exclusive remedy against the State for a claim," § 10–308(c)[5], made by "an individual, who while an inmate in the Patuxent Institution, the Baltimore City Detention Center, or a correctional facility in the Division of Correction: (1) was engaged in work for which wages or a stipulated sum of money was paid by a correctional facility; and (2) sustained a permanent partial disability or permanent total disability: (i) as a result of a personal injury arising out of and in the course of work for which wages or a stipulated sum of money was paid by a correctional facility; and (ii) that incapacitated [the claimant] or materially reduced [his or her] earning power in that type of work." § 10–304. *See Dixon v. Department of Public Safety and Correctional Services,* 175 Md.App. 384, 927 A.2d 445 (2007).

Although Jennifer does not dispute that his injury occurred "in the course of" his employment, while he was "engaged in work for which wages or a stipulated sum of money was paid by a correctional facility," and that he "sustained a permanent partial disability or total disability," *id.,* he maintains that, because his injury neither "a[rose] out of" his work nor was "accidental," *id.,* it did not fall within the exclusive province of the Board.

---

4. The SCBA is currently codified as §§ 10–301–310 of the Maryland Code, Correctional Services Article (1999).

5. Maryland Code, Correctional Services, § 10–308. Claim payments. (...)
(c) The compensation authorized under this subtitle is the exclusive remedy against the State for a claim that falls within the jurisdiction of the Board.

*"Arising Out Of"*

The SCBA does not explicitly define the phrase "arising out of." Nor have our appellate courts considered the meaning of this phrase in the context of that act. But they have repeatedly considered its import in other statutory settings, notably § 9–101(b) of what is now entitled the Workers'[6] Compensation Act ("WCA"),[7] which employs this locution, as the SCBA does, in defining compensable claims. Section 9–101(b) of the WCA states that an injury covered by that act is one "that *arises out of* and in the course" of the claimant's employment. (Emphasis added.)

Jennifer maintains, however, that it would be error for us to assume that the legislature intended that the phrase, "arising out of," be given the same meaning in the SCBA that it has been given in the WCA. He claims that, where the legislature intended that phrases common to both acts would have the same meaning, it expressly said so in the SCBA. To illustrate his point, he invokes § 10–301(c) and § 10–301(d) of the SCBA, which respectively state that "permanent partial disability" and "permanent total disability" shall have the same meanings in the SCBA that they have in the WCA.[8]

---

**6.** Originally called the "Workmens' Compensation Act," this statute was renamed the "Workers' Compensation Act" in 1984, pursuant to Chapter 279, Acts of 1984, which provided: "[T]he term 'workmen's compensation' is to be revised to read 'workers' compensation.' The terms are synonymous." *See* Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 14A.

**7.** The Maryland Workers' Compensation Act is currently codified at, §§ 9–101–9–308 of the Maryland Code, Labor and Employment Article (1999).

**8.** Section 10–301(c) of the SCBA provides: " 'Permanent partial disability' has the same meaning given under Title 9, Subtitle 6, Part IV of the Labor and Employment Article," which corresponds to the particular WCA provision specifying the terms of compensation to be awarded for permanent partial disabilities. And § 10–301(d) of the SCBA states: "Permanent total disability' has the same meaning given under Title 9, Subtitle 6, Part V of the Labor and Employment Article," which is the WCA provision specifying the terms of compensation to be awarded for permanent total disabilities.

But this argument is misleading. The SCBA relies on the WCA for the definitions of "permanent partial disability" and "permanent total disability" because those locutions, unlike "arising out of," are expressly defined in that act. In other words, the reason that the SCBA does not refer to the WCA's definition of "arising out of" is simply because it contains no such definition.

If those sections of the SCBA provide little support for Jennifer's position, the legislative history of the SCBA provides even less. In fact, as we shall see, that history compels us to conclude that the phrase, "arising out of," was placed in the SCBA to convey the same meaning that it does in the WCA.

Before the legislature enacted the SCBA, the WCA governed claims made by all workers, including inmates at Maryland's correctional facilities, for injuries "arising out of and in the course of" their employment.[9] *See* Md.Code (1939), Art. 101, § 14. But, in 1961, inmate claims were removed from the WCA for all workers with the passage of the SCBA.[10] That act established a separate board, the Sundry Claims Board, to handle claims for compensation made by prison inmates for work-related injuries. To be more precise, its purpose, in the words of the act, was to "amend[ ] the compensation laws to remove therefrom references to the payment of workmen's compensation to certain prisoners and inmates of penal institutions ... [and] creat[e] a 'Sundry Claims Board' to provide for the payment of claims for injuries to certain prisoners in this State, and relating generally to the payment of workmen's compensation benefits and to the payment of other claims for injuries incurred by prisoners and inmates of [Maryland] penal institutions." *See* Md.Code (1957, 1961 Supp.), Art. 41, § 188A.[11]

---

9. The phrase "arising out of" was inserted into that act in 1939.

10. The SCBA was enacted by the Maryland General Assembly as 1961 Md. Laws, Chaps. 440, 719, and was later codified under Md.Code (1957, 1961 Supp.), Art. 41, § 188A.

11. In 1986, the SCBA was renumbered, without substantive changes, so that it now occupies § 4–701 of Art. 41 of the Maryland Code.

In 1993, the SCBA was amended and the phrase, "arising out of," was added so that the act now expressly required that a prisoner's injury *aris[e] out of* and in the course of work" to fall within the exclusive jurisdiction of the Sundry Claims Board. *See* 1993 Md. Laws, Chap. 133.[12] (Emphasis added.)

Re-codified in 1999 as §§ 10-301-10-310 of the Maryland Code, the statute currently provides, as we stated earlier, that the Board "shall administer benefits ... to an individual who, while an inmate in the Patuxent Institution, the Baltimore City Detention Center, or a correctional facility in the Division of Corrections:

(1) was engaged in work for which wages or a stipulated sum of money was paid by a correctional facility; and

(2) sustained a permanent partial disability or permanent total disability:

(i) as a result of a personal injury *arising out of* and in the course of work for which wages or a stipulated sum of money was paid by a correctional facility; and

(ii) that incapacitated the individual or materially reduced t he individual's earning power in that type of work."

§ 10-304. (Emphasis added.)

After defining what is compensable in § 10-304, the SCBA goes on to list, in § 10-308(a)[13], what factors may be considered by the Board as to whether a claim should be compensated and, if so, in what amount, stating:

In determining what compensation, if any, to allow a claimant, the Board shall consider:

(1) the good faith of the claimant;

(2) *the possibility that the alleged injury was self-inflicted or not accidental;*

---

**12.** The act was later re-codified as Maryland Code (1957, 1990 Repl. Vol., 1993 Supp.), § 4-701(a)(I).

**13.** Section 10-308(a) was formerly Art. 41, § 188A(e) of the SCBA. *See Dept. Of Public Safety & Correctional Servs. v. Le Van*, 288 Md. 533, 419 A.2d 1052 (1980).

(3) the extent and nature of the injury;

(4) the degree of disability;

(5) the period of disability or incapacity for other work; and

(6) the ordinary earning power of the claimant.

§ 10–308(a) (Emphasis added.)

The phrase, "arising out of" was added to the WCA, as we noted earlier, in 1939, when prisoner compensation claims were still covered by that act. *See* Md.Code (1939), Art. 101, § 14. That phrase was thereafter interpreted by our appellate courts in the context of that act and that interpretation applied to all workers—*see, e.g., Livering v. Richardson's Restaurant,* 374 Md. 566, 823 A.2d 687 (2003); *Mulready v. Univ. Research Corp.,* 360 Md. 51, 756 A.2d 575 (2000); and *Montgomery County v. Smith,* 144 Md.App. 548, 799 A.2d 406 (2002)—including prison inmates. *See Gray v. Dept. of Correction,* 230 Md. 508, 187 A.2d 860 (1963). Later, after the SCBA was passed, this language was added to more specifically define compensable injuries. In so doing, the legislature, we presume, was "aware of the interpretation" that our appellate courts had previously placed on that language in interpreting the WCA and consequently added that language with the expectation that it would be given the same interpretation when it was judicially construed in the context of the SCBA. *See Del Marr v. Montgomery County,* 169 Md.App. 187, 212, 900 A.2d 243 (2006) ("[T]he Legislature is presumed to be aware of the interpretation that the courts ha[ve] placed upon its enactments.").

■ We further presume the legislature "intended statutes that affect [the] same subject matter to blend into [a] consistent and harmonious body of law." That is to say, "various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible." *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9 (1990) (citing *Taxiera v. Malkus,* 320 Md. 471, 481, 578 A.2d 761 (1990); *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 56, 507 A.2d 172 (1986);

*Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985)). Given that the SCBA and the WCA "affect the same subject matter" and are "consistent and related," we conclude that the legislature intended them "to blend into [a] consistent and harmonious body of law." *Bricker,* 321 Md. at 93, 581 A.2d 9 (other citations omitted). To achieve that end, we must give the phrases they share, such as "arising out of," the same meaning in both acts.

Still, hoping to persuade us to do otherwise, Jennifer cites *Dept. of Public Safety & Correctional Servs. v. Le Van,* 288 Md. 533, 419 A.2d 1052 (1980), for the proposition that the WCA provides no guidance in such matters. But a review of that case leads us to question its relevance.

In *Le Van,* the Court of Appeals held that the circuit court had erred in applying the WCA—specifically, Art. 101, § 36(4)(a) [14]—to calculate an award for a claimant's back injury under the SCBA when the latter act had a specific provision—namely, Art. 41 § 188A(e)—setting forth the factors that should be considered in determining the amount of compensation that should be awarded [15]. In substituting the factors set forth in Art. 101, § 36(4)(a) of the WCA for those expressly stated in Art. 41 § 188A(e) of the SCBA, the circuit court rendered a significant part of that act "meaningless, surplusage, superfluous or nugatory" and thereby violated a cardinal rule of statutory construction. *See, e.g., Government Employees Ins. Co. and GEICO v. Insurance Commissioner of the State of Maryland,* 332 Md. 124, 132, 630 A.2d 713

---

**14.** That particular provision of the WCA specified that "the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of injury." Md.Code (1957, 1979 Repl. Vol.), Art. 101, § 36(4)(a).

**15.** Those specific factors, as listed in the SCBA, were "the good faith of the claimant, the possibility that the alleged injury was self-inflicted or other than accidental, the extent and nature of the injury, the degree of disability, the period of any disability or incapacity for other work, and the ordinary earning power of the claimant." Art. 41, § 188A(e) (later re-codified as § 10–308(a) of the Maryland Code, Correctional Services Article).

(1993) (citing *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992); *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177 (1990); *Kindley v. Governor of Md.*, 289 Md. 620, 625, 426 A.2d 908 (1981); *Moberly v. Herboldsheimer*, 276 Md. 211, 217, 345 A.2d 855 (1975)). (It is a cardinal rule of statutory interpretation that, in construing "two statutes, enacted at different times and not referring to each other ... neither statute should be read ... so as to render the other ... meaningless, surplusage, superfluous or nugatory.").

But that is clearly not what either party is requesting us to do here. To the contrary, we are not being asked to ignore the plain language of the SCBA in favor of competing language in the WCA but to determine whether a phrase, which both acts share, should be given the same interpretation in the SCBA that we have given it in that act's legislative predecessor and now counterpart, the WCA, in light of the common goals and history of those two acts. Thus, *Le Van* is simply not applicable to the instant case.

 The phrase "arises out of" in § 9–101 of the WCA has been interpreted by the Court of Appeals as "requir[ing] not that the performance of an employment-related task be the direct or physical cause of the injury, but, more broadly, that the injury be incidental to the employment, such that it was by reason of the employment that the employee was exposed to the risk resulting in the injury." *Livering v. Richardson's Restaurant*, 374 Md. 566, 574–575, 823 A.2d 687 (2003). In other words, "[a]n injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed [the employee] in the position where he [or she] was injured." [16] *Id.* at 575, 823 A.2d 687 (citations omitted).

---

16. This is commonly known as the "positional-risk test," which Maryland has adopted to determine whether an injury arose out of employment. It is considered "more liberal" than the "increased risk test," which requires that "the employee be exposed to a quantitatively greater degree of risk than the general public." *Livering*, 374 Md. at 575, 823 A.2d 687 (citing *Mulready*, 360 Md. at 66, 756 A.2d 575).

Illustrative of this principle is *Mulready v. Univ. Research Corp.*, 360 Md. 51, 53, 66, 756 A.2d 575 (2000). In that case, an employee's injury caused by her slip and fall in her hotel bathtub, which occurred while she was attending a seminar in Canada on behalf of her employer, was held to arise out of her employment under the WCA because "it occurred as a result of an activity *reasonably incidental* to the travel that the employer required." (Emphasis added.)

Conversely, in *Montgomery County v. Smith,* 144 Md.App. 548, 551, 799 A.2d 406 (2002), an off-duty injury suffered by a correctional officer while he was playing basketball at the detention center where he worked was held not to have arisen out of his employment because such "recreational activities" were not " 'incident' to his job as a prison guard." *Id.* at 578, 799 A.2d 406. In so holding, we explained that "[a]n injury arises out of the employment if it would not have occurred but for the fact that the employee's job required the employee to be in the place where he was injured." *Smith,* 144 Md.App. at 577, 799 A.2d 406 (citing *Mulready,* 360 Md. at 66, 756 A.2d 575). Since the officer's "job did not require him to be on the basketball court where he was injured," his injury, we concluded, did not satisfy that test. *Id.*

But Jennifer's injury does. Certainly, he would not have suffered the injury he did "but for the fact that the conditions and obligations of the employment placed [him] in the position where he was injured." *Livering,* 374 Md. at 574–75, 823 A.2d 687. At the time the assault took place, Jennifer was required by his employer, the Central Laundry Facility, to be in the kitchen. His presence there provided Taylor, who had also been assigned to work in the kitchen that day, with the opportunity to assault him as well as the instrument with which to carry out that attack. Thus, Jennifer's injury was incidental to his work. Because a "reasonably incidental" relationship between the injury and the claimant's work is sufficient, in itself, to establish that an injury arose out of employment, we conclude that Jennifer's injury satisfied that requirement. *Mulready,* 360 Md. at 53, 66, 756 A.2d 575 (2000).

Although Jennifer appears to concede this very point,[17] he claims that the assault was motivated by Taylor's animosity toward him and that it therefore "could have occurred anywhere." Relying on *Gray v. Dept. of Correction,* 230 Md. 508, 187 A.2d 860 (1963), Jennifer argues that his injury did not arise out of his employment. In *Gray,* a prisoner was injured under what Jennifer claims were analogous circumstances: that is, as a result of being assaulted while working in the laundry at a Maryland penitentiary. Because the *Gray* Court found that the prisoner's injuries did not "arise out of" his work, we must, Jennifer claims, reach the same result here.

But, apart from the fact that in both *Gray* and the instant case the claimant and his assailant were inmates at a Maryland prison when the claimant was injured, the two cases have few material facts in common. Indeed, in rejecting recovery under the Sundry Board Claims Act, the *Gray* Court stressed that "a clear inference" could be drawn from the evidence "that [the prisoner] was injured as the result of a fight with another inmate" that had previously occurred outside of work and in "retaliation for a homosexual advance by [the injured prisoner]." *Id.* at 512, 187 A.2d 860. In contrast, Jennifer has offered no basis from which an inference may be drawn that his injury was the product of a prior confrontation unrelated to his work activity.

Indeed, the only explanation Jennifer offers in his complaint for the assault was that Taylor was "under care by [the State] for mental health problems," relating to his "violent disposition"; that he had exhausted the medication he was taking for that problem; and that the State had failed to provide him with additional medication to keep his "propensity for violent outbursts" in check. There is no suggestion in the complaint that the attack had anything to do with any prior relationship or confrontation with Taylor. And, although Jennifer suggests in his brief, as he did in his unsuccessful opposition to

---

17. Jennifer states in his brief, as he did in his opposition to the State's motion for summary judgment below, that his injury "on the serving line was merely incidental to his work."

the State's motion for summary judgment, that Taylor's assault was motivated by animus, he offers no explanation or basis for this bald accusation. Hence, *Gray* has no applicability here.

This exception to the compensability of at-work injuries— that is, injury-causing assaults triggered by antecedent quarrels unrelated to the parties' work—did not, we observe, originate with *Gray*. On the contrary, long before *Gray*, our state's highest court held that, where evidence of such a quarrel exists, any injuries resulting from an at-work assault precipitated by that quarrel are not compensable. *See Rice v. Revere Copper & Brass, Inc.*, 186 Md. 561, 48 A.2d 166 (1946).

*Rice* involved a workers' compensation claim brought by the widow of a utility worker, whose injury and subsequent death resulted from a fellow employee's attack at their mutual workplace. Affirming the denial of that claim below, the Court of Appeals held that that attack did not arise out of the employee's work because there was evidence that "an antecedent quarrel, *unrelated to the work*, [was] the primary cause of the injury." *Id.* at 566, 48 A.2d 166. (Emphasis added). There apparently had been "bad blood," the Court observed, between the injured employee and his attacker, concerning, in part, the injured employee's prior conduct at the attacker's house. *Id.* at 565, 48 A.2d 166. The Court further noted that the assault "was not due to an emotional flare-up generated by friction inseparable from the working conditions, nor was the opportunity for revenge enhanced thereby." *Id.* at 568, 48 A.2d 166.[18]

---

**18.** Other state courts have reached the same conclusion and held assaults by co-employees may be considered to arise out the injured employees' work—and, thus, be compensable under the relevant workers' compensation statutes—unless such attacks are "unconnected with the employment, or . . . for reasons personal to the assailant[s] and the one[s] assaulted, or . . . . [when] the employment is not the cause" of the assault. *See, e.g., Sanderson Farms, Inc., v. Jackson*, 911 So.2d 985, 990 (Miss.App.2005) (Employee's injuries from assault by co-employee did not "arise of out employment" where assault arose from argument between employee and co-employee regarding personal loan that was unrelated to work); *Pecoraro v. Russell–Miller Milling, Co.*, 9 A.D.2d

In contrast, Taylor's attack on Jennifer clearly was "generated by friction inseparable from [their] working conditions," specifically, the friction caused by the prison official ordering Taylor to serve his co-worker, Jennifer, a hamburger, while both were working in the prison kitchen. Moreover, Taylor's "opportunity for revenge" was "enhanced" by those working conditions, as his job placed him in close proximity to Jennifer and provided him with the tool with which to carry out the assault. And, finally, as we have pointed out, there was no claim of a prior confrontation between Jennifer and Taylor, only the whisper of a suggestion that there had been "animosity" between the two.[19] Thus, unlike in *Gray* and *Rice,* the assault that injured Jennifer was not triggered by "an antecedent quarrel, *unrelated to the work,*" but was inseparable from the parties' working conditions and thus did, in fact, "arise out of" his employment.

*"Accidental Injury"*

■ Anticipating that we might reach this conclusion, Jennifer argues, in the alternative, that, even if his injury arose out of his employment, the circuit court nonetheless erred in granting summary judgment in favor of the State on the grounds that the Sundry Claims Board was his exclusive remedy because, according to Jennifer, § 10–308[20] of the

---

992, 993, 194 N.Y.S.2d 594 (N.Y.A.D.1959) (Employee's injuries from assault by co-employee did not "arise of out employment" where employee died as result of injuries he sustained when struck by fellow employee because of disagreement arising over a personal bet.) *See also Velasquez v. Industrial Commission,* 41 Colo.App. 201, 203, 581 P.2d 748 (Colo.Ct.App.1978) (Employee's injuries from assault by co-employee did not "arise of out employment" "when the animosity or dispute that culminate[d] in [the] assault [was] imported into the employment from claimant's domestic or private life, and [was] not exacerbated by the employment.") (quoting 1A Larson, The Law of Workmen's Compensation § 11.21).

19. While Jennifer claims that the assault was motivated by Taylor's animosity toward him, nowhere does Jennifer mention any basis for that contention.

20. Maryland Code, Correctional Services, § 10–308. Claim payments

SCBA covers only an accidental injury and not an injury that was "inflicted by the willful act of a third party," as his was.

But, as the State points out, the term "accidental" is defined in the WCA to expressly include "an injury caused by the *willful* or negligent act of a third person." [21] (Emphasis added.) That definition of "accidental" predates the enactment of the SCBA. And, as we previously observed in interpreting the phrase, "arising out of"—which, like the term "accidental," is ensconced in both statutes—the legislature "is

---

(a) In determining what compensation, if any, to allow a claimant, the Board shall consider:

(1) the good faith of the claimant;

(2) the possibility that the alleged injury was self-inflicted or not accidental;

(3) the extent and nature of the injury;

(4) the degree of disability;

(5) the period of disability or incapacity for other work; and

(6) the ordinary earning power of the claimant.

(b)(1) The Governor shall include money to pay a claim that is approved by the Board in the State budget for the fiscal year that follows the fiscal year in which the Board approves the claim.

(2) The Board shall pay to the claimant or the claimant's representative any compensation approved by the Board and included in the State budget.

(c) The compensation authorized under this subtitle is the exclusive remedy against the State for a claim that falls within the jurisdiction of the Board.

(d) An inmate working under the supervision of Maryland Correctional Enterprises in the Federal Prison Industry Enhancement Program:

(1) is excluded from the jurisdiction of the Board; and

(2) shall be administered benefits as provided under Title 9 of the Labor and Employment Article.

**21.** The following provision was added to the definition of "accidental injury" under the 1951 amendment to the WCA, then codified as Maryland Code, 1951, Art. 101, § 68(6):

'Injury', 'Personal Injury', 'Accidental Injury' and 'Accidental Personal Injury' means only injuries arising out of and in the course of employment and such occupational disease or infection as may naturally result both from, including frost-bite and sun-stroke resulting from weather conditions, *and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of employment.* (Emphasis added).

We wish to point out that, in the current version of this act, the spelling of "wilful" has been changed to "willful." *See* § 9–101 of the Maryland Code, Labor and Employment Article.

presumed to be aware of the interpretation that this Court has placed upon its enactments," *Del Marr,* 169 Md.App. at 212, 900 A.2d 243. We must therefore assume that in inserting the term "accidental" in the SCBA, the legislature expected that it would carry the same meaning in the SCBA that it does in the WCA, that is, to include an injury caused by the willful acts of a third party. Indeed, there is no indication in the text or history of § 10–308 that the General Assembly intended otherwise.

Under the WCA, "an injury to an employee inflicted by a third person in the course of the employment, either willfully or negligently," is compensable "if the danger of such injury was an incident of the special conditions of the employment[,] that is, if it arose out of the employment." [22] *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 425, 384 A.2d 748 (1978) (citing *Giant Food, Inc. v. Gooch,* 245 Md. 160, 165, 225 A.2d 431 (1967)). That may be so, Jennifer acknowledges, but he insists that the scope of the term "accidental," in the context of the SCBA, is narrower and covers only an injury "from an accidental cause."

To bolster his argument, Jennifer cites one particular part of § 10–308(a) of the SCBA, which states that, "[i]n determining what compensation, if any, to allow a claimant, the Board

---

**22.** Other state courts have similarly held that an injury caused by a third party's assault may arise out of the victim's employment and hence be compensable under the applicable workers' compensation statute. *See, e.g., Plummer v. Landmark Communications, Inc.,* 235 Va. 78, 366 S.E.2d 73, (1988) (Injury suffered by route carrier of newspapers, who was shot by an unknown assailant at 2.00 a.m. while waiting to obtain her supply of newspapers for delivery, arose out of and in the course of her employment; hence her exclusive remedy for the injury was under the WCA); *Seymour v. Rivera Appliances Corp.,* 28 N.Y.2d 406, 322 N.Y.S.2d 243, 271 N.E.2d 224 (1971) (Death of employee caused by two co-workers shooting him, the day after the decedent intervened on behalf of one of the two workers when the two engaged in a dispute during an afternoon break, arose out of and in course of his employment; hence employee's death was compensable under the WCA); *Cedar Rapids Cmty. Sch. v. Cady,* 278 N.W.2d 298 (Iowa 1979) (Injury sustained by an employee from an on-the-job assault by a deranged co-employee arose out of employment within the meaning of workers' compensation law).

shall consider ... the possibility that the alleged injury was self-inflicted or not accidental." From this statement, Jennifer draws the questionable conclusion that any injury which is not "accidental" falls outside the purview of the Sundry Claims Board. We heartily disagree.

Section 10–308(a), in its entirety, states:

In determining what compensation, if any, to allow a claimant, the Board shall consider:

(1) the good faith of the claimant;

(2) *the possibility that the alleged injury was self-inflicted or not accidental;*

(3) the extent and nature of the injury;

(4) the degree of disability;

(5) the period of disability or incapacity for other work; and

(6) the ordinary earning power of the claimant.

(Emphasis added.)

The plain language of that provision clearly does not preclude recovery for non-accidental injuries, but only requires that the Sundry Claims Board consider "the possibility that the alleged injury was self-inflicted or not accidental," as one of six factors, in deciding whether and at what level to compensate a claimant for an injury he has sustained.

Moreover, reading § 10–308(a), not as a set of discrete phrases, but "as a whole, considering the interrelationship or connection among all of its provisions," as the canons of statutory construction advise us to do, *see Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951 (1996) (citing *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–467, 620 A.2d 340 (1993)), we conclude that "not accidental" is a catch-all phrase and, in that capacity, refers to injuries which, while not technically "self-inflicted," are ones which the claimant played some role in bringing about. For example, the Board may take into account whether the claimant provoked the assault or sparked the confrontation which caused his injuries. And since, in this case, there is no claim that Jennifer did anything to precipitate Taylor's attack, that provision is of no relevance here.

Finally, Jennifer asks us to consider Maryland Code of Regulations ("COMAR"), 12.05.01.06B.(4) [23], which implements the SCBA, for the proposition that only accidental injuries are covered by that act. But Jennifer's reliance on COMAR 12.05.01.06B is misplaced. It states:

Compensation provided for in [the SCBA] ... shall be payable for injuries sustained by prisoners engaged in work under the following circumstances:

...

(4) The injury cannot be self-inflicted or result from activities other than work for which wages or a stipulated sum are paid by the institution.

---

23. COMAR 12.05.01.06. Compensation states in full:

A. The schedule in this regulation is published as an adjunct to the criteria set forth in Correctional Services Article, Title 10, Subtitle 3, Annotated Code of Maryland. The schedule is not intended to limit the discretion of the Board and its application of the criteria set out in Correctional Services Article, Title 10, Subtitle 3, but is intended as a guideline in setting evaluation for a particular injury.

B. Compensation provided for in Correctional Services Article, Title 10, Subtitle 3, Annotated Code of Maryland, shall be payable for injuries sustained by prisoners engaged in work under the following circumstances:

(1) The prisoner shall be housed in the Patuxent Institution or an institution under the Division of Correction.

(2) The prisoner shall sustain a "permanent partial disability" as provided by the Workers' Compensation Law, Article 101, Annotated Coded of Maryland.

(3) The injury shall incapacitate or materially reduce the prisoner's earning power in "extra-hazardous" work.

(4) The injury cannot be self-inflicted or result from activities other than work for which wages or a stipulated sum are paid by the institution.

(5) The Board shall arrive at the ordinary earning power of the claimant as set forth in Correctional Services Article, Title 10, Subtitle 3, Annotated Code of Maryland, by a consideration of the claimant's employment before incarceration, the nature of the skills involved in the institutional employment after release from the institution, or actual employment in the case of inmates already released. A consideration of "ordinary earning power" shall be limited to any adjustment the Board determines to be appropriate in a case when obtaining employment after incarceration at a given rate would be possible but for the reduction in earning power or incapacities resulting from the injury.

This provision contains nothing that suggests that injuries inflicted by third parties are not covered by the SCBA.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**