29 A.3d 999

**John DOE**

v.

**BUCCINI POLLIN GROUP, INC. d/b/a PM
Hospitality Strategies, Inc. et al.**

**No. 812, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Oct. 3, 2011.

Anne M. Miller (Frederick W. Miller, Miller & Miller, PA, on the brief), Baltimore, MD, for appellant.

Lawrence G. Giambelluca (Rudolph L. Rose, J. Gregory Donlin, Julie D. Murray, Semmes, Bowen & Semmes, on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., MEREDITH, ARRIE W. DAVIS (Retired, Specially Assigned), JJ.

ARRIE W. DAVIS (Retired, Specially Assigned), J.

This appeal presents the question of whether an injury suffered by appellant at the hands of a third party was "directed against [him] in the course of" his employment. John Doe, appellant, appeals from the decision of the Circuit Court for Baltimore City that reversed an award of benefits made by the Workers' Compensation Commission. In this workers' compensation case, appellant raises two issues, which we have combined and rephrased to be whether the circuit court properly ruled that appellant's injuries were not covered by the Maryland Workers' Compensation Act (Act).[1] Md.

---

1. Appellant presents the following arguments:

 I. Appellant is entitled to workers' compensation benefits as a result of an assault and battery and conspiracy to murder that arose out of, and originated in the course of, his employment and continued without interruption from the time he left the workplace until he was shot.

 II. Appellant was not permitted to safely leave the workplace and was unable to separate himself from the animosities and dangers created in the course of his employment and his injuries fall

Code (1991, 1999 Repl.Vol., 2007 Supp.), § § 9–101 *et seq.* of the Labor and Employment Article (LE or Act). For the reasons set forth below, we shall hold that appellant's injuries are not covered by the Act because the assault that caused them was not "directed" against him in the course of his employment. Hence, we affirm the decision of the circuit court.

## Background and Procedure

### I

According to an agreed statement of facts, appellant worked as a banquet houseman at the BWI Hilton Hotel in Linthicum. He was responsible for setting up tables in the banquet hall.[2] The events of this case began with a disagreement with a co-worker, Keya Gardner, over work supplies, specifically a supply cart. Appellant had stocked the cart. After appellant took a break, he returned to find the cart missing. He then sought to retrieve the cart from Gardner. Gardner refused to allow appellant to take the cart and, while he was taking the cart, appellant's hand touched Gardner's hand. Gardner then became enraged and began to curse. She followed appellant into a banquet room, continuing her rant, and also upset several banquet tables that appellant had prepared.

Gardner, still in a rage, used her cell phone to call a friend, Darryl Newsome. She told him that "[appellant] touched my hand and you should come get your thing and take care of him." The argument moved to the lobby and came to the attention of the banquet supervisor. Apparently in response to the argument between appellant and Gardner, appellant's supervisor told appellant that, since his shift was just about over, he should clock out and go home. Appellant changed into street clothes and, at about 9:38 p.m., signed out to go home.

---

under the "special hazard" and proximity exceptions to the going and coming rule.

**2.** The agreed statement of facts, which consists of fifty numbered paragraphs, was admitted into the record at the hearing before the circuit court.

He offered a ride to a Mr. Wees, who lived in Baltimore. As they left the hotel lot, appellant saw Darryl Newsome. Shortly thereafter, Gardner left the hotel lot in a separate vehicle.

The stipulated facts portray a chase as Gardner and appellant were traveling at a high rate of speed. Appellant brought his vehicle to a stop in a dark alley behind Wees's home in Baltimore City, about thirteen miles from the hotel. Newsome arrived in his vehicle, pulled behind appellant's car, emerged and shot appellant, rendering him a paraplegic.[3]

## II

On August 19, 2008, appellant filed a claim for workers' compensation benefits under the Act.[4] A hearing on this claim was conducted on December 4, 2008 before the Workers' Compensation Commission (Commission). On December 12, 2008, the Commission awarded appellant temporary total dis-

---

**3.** Both Gardner and Newsome were prosecuted in connection with these events. Gardner was convicted under two charging documents of attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, conspiracy to commit first-degree murder, conspiracy to commit first-degree assault, conspiracy to use a handgun in the commission of a crime of violence and conspiracy to unlawfully wear, carry, and transport a handgun. She was sentenced to thirty years' imprisonment, with all but twenty years suspended, for the attempted first-degree murder conviction and the remaining convictions under the first charging document were merged. She received an additional thirty-year sentence for the convictions under the second charging document. That sentence, also with ten years suspended, was ordered to run concurrent.

Newsome was convicted of attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, wearing, carrying, and transporting a handgun and reckless endangerment. He was sentenced to thirty-five years' imprisonment, with all but twenty years suspended for the attempted first-degree murder conviction, and received a concurrent three years for the handgun conviction. Their convictions have been affirmed on appeal to this Court. *Gardner & Newsome v. State*, Nos.1973 & 1975, Sept. Term 2009 (filed Aug. 2, 2011).

**4.** At the time of the injury in this case, the relevant provisions of the Workers' Compensation Act were set forth in Md.Code (1991, 1999 Repl.Vol., 2007 Supp.), §§ 9–101 *et seq.* of the Labor and Employment Article.

ability benefits and associated medical expenses. The Commission denied the employer's motion for rehearing on January 16, 2009 and, on January 26, the employer filed a petition for judicial review in the Circuit Court for Baltimore County. *See* Md.Code (1991, 1999 Repl.Vol., 2008 Supp.), § 9–737 of the Labor and Employment Article (LE).[5]

Initially, the parties filed cross-motions for summary judgment. The circuit court denied these motions and set the

---

**5.** The Act provides for judicial review as follows:
§ 9–737.
 An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:
 (1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules;
 (2) attaching to or including in the petition a certificate of service verifying that on the date of the filing a copy of the petition has been sent by first-class mail to the Commission and to each other party of record; and
 (3) on the date of the filing, serving copies of the petition by first-class mail on the Commission and each other party of record.
Md.Code (1991, 1999 Repl.Vol.), § 9–737 of the Labor and Employment Article (LE). LE § 9–745 provides:
 (a) The proceedings in an appeal shall:
 (1) be informal and summary; and
 (2) provides each party a full opportunity to be heard.
 (b) In each court proceeding under this title:
 (1) the decision of the Commission is presumed to be prima facie correct; and
 (2) the party challenging the decision has the burden of proof.
 (c) The court shall determine whether the Commission:
 (1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;
 (2) exceeded the powers granted to it under this title; or
 (3) misconstrued the law and the facts applicable in the case decided.
 * * *
 (e)(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.
 (2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

matter for trial. Following a hearing on April 27, 2010, the circuit court reversed the Commission's decision awarding benefits and this appeal followed. In overturning the Commission's award, the circuit court determined that appellant's injuries were not covered by the Act. The trial judge's ruling from the bench included the following:

At the proceedings below, the Workers' Compensation Commission awarded benefits to the claimant. As I stated, the employer and insurer have appealed that award. The central issue in this case is whether the claimant's injury is compensable under the Workers' Compensation law.

\* \* \*

Here, the appellant employer and insurer maintain that the only category of injury that could make the claimant's injury compensable falls under the ambit of Section 9–101(b)(2) of the Labor & Employment Article. That section defines an accidental injury as being;

"an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee; . . ."

It is noteworthy, as the appellant has maintained in this appeal, that the other two subsections of Section 9–101(b) cover actions that; "arise out of and in the course of employment", as opposed to the language in Section 9–101(b)(2) that does not include language that "arises out of and in the course of employment" and only includes the language "in the course of employment." The plain language of the statute restricts compensation to injuries resulting from willful acts to only those injuries that occur in the course of employment.

[I]t is well settled that in the "course of employment" refers to the time, place and circumstance in which the injury occurred, and requires that an injury take place while the employee is at the place of employment performing his duties, or engaged in some task incident to [his] duties.

\* \* \*

Here, there is no dispute that the claimant was not at work and was not performing any task incident to his employment when he was most unfortunately, and regrettably shot.

The circuit court surveyed case law from other jurisdictions in which compensation awards were granted in similar factual situations. Citing the Court of Appeals' decision in *Edgewood Nursing Home v. Maxwell*, 282 Md. 422, 384 A.2d 748 (1978), the court rejected appellant's argument that this case presents an exception to the "going and coming rule"—the proximity rule—under which coverage for an injury, while generally excluded, would be allowed under certain circumstances. The court explained:

Specifically, the claimant highlights this exception [proximity rule] and argues that exposure to a co-worker who would seek to have him killed over a minor workplace dispute, constitutes a special hazard that really should allow this injury to be compensable, even though injury occurred over thirteen miles from the place of employment, after the employee punched out for the day, and while the employee was not engaged in any activity on the employer's behalf.

The proximity rule states that, by virtue of being in close proximity to his place of employment, an employee who is subjected to special risks beyond those to which the general public is exposed, and sustains an injury from that enhanced risk, sustains a compensable injury even though the injury occurs off the property of the workplace.

While geographic proximity is not the sole factor at play under the proximity rule it clearly is a factor, and one that, under the facts of this case, regrettably, the claimant can not satisfy.

Clearly, the Court understands the significant and tragic nature of this case. But I am required to apply the law as the Court understands it to be written at this time. And so, based on that, I do find that the employer and insurer has carried their burden of demonstrating, by a preponderance

of the evidence, that the decision reached by the Workers' Compensation Commission was wrong.

Therefore, based on the law as it exists today, this Court has no choice but to reverse the Workers' Compensation Commission's award of compensation and deny the claim for benefits that were made on behalf of the claimant.

This timely appeal followed.

## DISCUSSION

### *Standard of Review*

Appellate scrutiny of a workers' compensation decision depends upon the manner of the circuit court's judicial review of the Commission's decision. There are two modalities of judicial review in the circuit court:

A party dissatisfied by the action of the Commission may seek review in a circuit court by either proceeding on the record made before the Commission (much like judicial review of the final action of most state administrative agencies) or receive a new evidentiary hearing and decision before a jury [or the court] (much like an original civil complaint brought in a circuit court). Under either process ... the agency's decision is entitled to a presumption of correctness that must be overcome.

*Baltimore County v. Kelly*, 391 Md. 64, 67–68, 891 A.2d 1103 (2006). In the case before us, the circuit court conducted a *de novo* trial based on stipulated facts. Although the Commission's decision is presumptively correct, *see Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 357, 7 A.3d 13 (2010), "the propriety of the Commission's original fact finding is a matter of no consequence[,]" where there is a *de novo* proceeding in the circuit court. *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md.App. 155, 173, 867 A.2d 370 (2005). This is so because the circuit court in a trial *de novo* engages in a fresh consideration of the facts. *See Keystone Masonry Corp. v. Hernandez*, 156 Md.App. 496, 505–06, 847 A.2d 493 (2004). Because there was no testimony at the hearing, the court was presented with an agreed statement of facts and ruled on the

issue of coverage as a matter of law. Accordingly, the review of any factual findings by the court would be for clear error. *Granite State Ins. Co. v. Hernandez,* 191 Md.App. 548, 557–58, 992 A.2d 528 (2010). Our review of the circuit court's conclusions of law is *de novo. See id.,* 191 Md.App. at 558, 992 A.2d 528.

### Introduction

The "purpose of the Workers' Compensation Act ... is to 'provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury ... occurring in the course of employment.'" *Sanchez v. Potomac Abatement, Inc.,* 417 Md. 76, 82 n. 4, 8 A.3d 737 (2010) (quoting *DeBusk v. Johns Hopkins Hospital,* 342 Md. 432, 437, 677 A.2d 73 (1996)). The Act's principle objective of compensating the injured worker "pursuant to the statutory plan for disabilities which are occupationally related" is its "centerline." *See* RICHARD P. GILBERT & ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION LAW, § 2.02 at 2–2 (3d ed.2007). Worker's compensation legislation balances the interests of both employees and employers, for

[a]t the same time ... the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of "caring for the helpless human wreckage found [along] the trail of modern industry." *Liggett & Meyers Tobacco Company v. Goslin,* 163 Md. 74, 80, 160 A. 804, 807, (1932); *Brenner v. Brenner,* 127 Md. 189, 192, 96 A. 287, 288 (1915). *See* Ch. 800 of the Acts of 1914; *see also Belcher v. T. Rowe Price,* 329 Md. 709, 736–37, 621 A.2d 872, 885–86 (1993). In other words, the Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability. *Belcher,* 329 Md. at 736, 621 A.2d at 885 (citing 1 Arthur Larson, *The Law of Workmen's Compensation,* § 1.20 at 2 (1992)).

*Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 76–77, 684 A.2d 1338 (1996) (footnotes omitted).

 Because the "Act is essentially social legislation[,]" its "provisions thereof are to be liberally construed. It must be interpreted to effectuate its general purpose and not strictly construed. Where there is a conflict in the Workmen's Compensation law, questions of construction should be resolved in favor of the claimant." *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79 (1945) (citations omitted). *See Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757 (1995). "The doctrine of liberal construction does not mean, however, that coverage may be granted beyond that which is authorized by the provisions of the Act." *Barnes v. Children's Hospital,* 109 Md.App. 543, 554, 675 A.2d 558 (1996). Hence, the "mere occurrence of an accident is an insufficient basis upon which to predicate a workers' compensation claim." *Montgomery County v. Wade,* 345 Md. 1, 9, 690 A.2d 990 (1997) (citing GILBERT & HUMPHREYS, *supra* at § 5.2).

### *Elements of Entitlement: LE § 9–101(b)(1)*

The Act defines the term "accidental injury" at LE § 9–101(b).[6] A claim based on the intentional or negligent act of a third person that results in an injury is properly considered in light of the definition of "accidental injury" as set forth in LE § 9–101(b)(2). Nevertheless, it is instructive to review the two elements that make up the general definition of accidental injury as set forth in LE § 9–101(b)(1), because appellant also effectively maintains that his injury arose out of his employment because it originated in the workplace.

---

**6.** Section 9–101(b) of the Act defines "accidental injury" in part as follows:

(b) "Accidental personal injury" means:

(1) an accidental injury that arises out of and in the course of employment;

(2) an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee[.]

In general, benefits are awardable to a covered employee who establishes by a preponderance of the evidence two elements of entitlement, that the claimant suffered an injury that both "arose out of" and occurred "in the course of" his or her employment. *See Livering v. Richardson's Restaurant.*, 374 Md. 566, 574, 823 A.2d 687 (2003). *See* LE § 9–501.[7] To satisfy the "arises out of" element, a claimant must establish that the injury "results from some obligation, condition, or incident of employment." *Livering v. Richardson's,* 374 Md. at 574, 823 A.2d 687. Judge Raker pointed out in *Livering* that "Maryland has adopted the positional-risk test to determine whether an injury arose out of employment." *Livering,* 374 Md. at 575, 823 A.2d 687 (citing *Mulready v. Univ. Research Corp.,* 360 Md. 51, 66, 756 A.2d 575 (2000)). In his treatise, Professor Larson describes this standard:

> An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. It is even more common for the test to be approved and used in particular situations. This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force, meaning by "neutral" neither personal to the claimant nor distinctly associated with the employment.

A. LARSON & L. LARSON, WORKERS' COMPENSATION LAW § 3.05 at 3–6 (2011) (footnote omitted). The "arising out of" element thus embraces injuries resulting from employment that is incidental to the work, although "not specifically required by

---

7. Section 9–501 of the Act provides in pertinent part:
 (a) Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:
 (1) the covered employee for an accidental personal injury sustained by the covered employee[.]

the employment." *Livering,* 374 Md. at 576, 823 A.2d 687. A " 'reasonably incidental' relationship between the injury and the claimant's work is sufficient, in itself, to establish that an injury arose out of employment[.]" *Jennifer v. Dep't of Pub. Safety & Corr. Servs.,* 176 Md.App. 211, 223, 932 A.2d 1213 (2007) (citation omitted).

As to the second element in the definition set forth in LE § 9–101(b)(1), the " 'course of employment' test directs our attention to the time, place, and circumstances of the accident in relation to the employment." *Montgomery County v. Wade,* 345 Md. at 11, 690 A.2d 990 (citing *Knoche v. Cox,* 282 Md. 447, 454–55, 385 A.2d 1179 (1978) (further citation omitted)). Judge Karwacki continued in *Wade:*

> An analysis of the occupational correlation of these factors "demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." ... Questions pertinent to this inquiry are: 1) when the employment began and ended, 2) whether the continuity of the period was broken, and 3) how far the employee placed himself or herself outside the employment during that period. ... Stated otherwise, an injury is in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto. ... "In the course of" refers to an injury occurring while the employee is performing a duty that he or she is employed to perform at a place where he or she reasonably may be in performance thereof. ... If the injury occurred at a point where the employee was within the range of dangers associated with the employment, it is held compensable under the Act. When the employer provides the mode of transportation, the predicate for an award of compensation under the Act is even more clear—courts have held that injuries incurred under these circumstances are ordinarily compensable because the employer has broadened the scope of employment by its provision of the transportation. ... Throughout this

analysis, however, it must be borne in mind that whether a given injury is in the course of the employment is determined by the facts and circumstances of each particular case.

*Montgomery County v. Wade,* 345 Md. at 11–12, 690 A.2d 990 (citations and internal punctuation omitted).

■ Appellant's injuries do not qualify as an "accidental injury" as defined in LE § 9–101(b)(1). Simply put, his injury did not arise out of his employment. Although appellant suffered from his association with Gardner, the "causative danger" was not "incidental to the nature of his work" and was independent of his employment relationship. *See Dep't of Corr. v. Harris,* 232 Md. 180, 183–84, 192 A.2d 479 (1963). Appellant essentially contends that his injury originated in his employment. He cites the fact that Gardner conspired with Newsome to kill him while she was present at work. We do not agree that appellant's injury had its origin in his employment for purposes of defining an "accidental injury," and are unable to conclude that it arose out of his work, notwithstanding that the dispute that ultimately led to his tragic injuries took place at the job. There is nothing incidental to appellant's duties in a personal dispute that, while being played out on the job, was peculiar to the nature of appellant's duties as a banquet houseman. Gardner's criminal behavior was not an incident of appellant's employment. Indeed, it is this type of aberrant behavior that led the General Assembly to enact LE § 9–101(b)(2), because third-party actions of this nature are generally not incidental to a claimant's work and, thus, would not "arise out of" a claimant's employment.

### *Single Element in Third-party Assault Cases—LE § 9–101(b)(2).*

■ Although appellant would not prevail on a claim for an accidental injury as that term is defined in LE § 9–101(b)(1), because his injury did not arise out of his employment, we turn to the issue before us, *i.e.,* whether his injury constitutes an "accidental injury" within the definition of LE § 9–101(b)(2). To satisfy this definition, appellant need only

demonstrate that he suffered an injury caused by a third party in the course of appellant's employment. LE § 9–101(b)(2) reflects the General Assembly's intent to " 'broaden the scope of the compensation statute to include as compensable an injury not attributable to the working environment provided it was incurred in the course of employment.' " *See Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 425, 384 A.2d 748 (1978) (quoting *Giant Food, Inc. v. Gooch,* 245 Md. 160, 165, 225 A.2d 431 (1967)). The Legislature relieved claimants, who had been injured by an intentional or negligent act of a third party, of the difficult burden of demonstrating the direct causative nexus between a sudden irrational act of a third party and the claimant's employment. Accordingly, in the case of an injury inflicted by a third party, the Act provides that a claimant need only demonstrate that the willful act of that party was directed at the claimant "in the course of the employment."

This provision, in both its current and preceding statutory form, has been addressed in a number of Maryland decisions. In *Giant Food, Inc v. Gooch,* the claimant, a parking lot attendant for Giant Food Stores, was shot and wounded in the parking lot of his store shortly before he was to begin work. The employer and carrier asserted that Gooch was not entitled to benefits under the Act, claiming that an injury that was inflicted by a third person did not "arise out of" Gooch's employment. The Court of Appeals rejected the claim that Gooch was not entitled to an award, and concluded that a claimant who is injured as the result of the wilful or negligent act of a third person need not establish that the injury "arose out of" his employment, but only that it be demonstrated that the injury occurred "in the course of" the employment:

> It is only reasonable to infer, therefore, that the legislature when it said that accidental personal injury as defined and made compensable by § 15 of Art. 101 was also to include "an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his

employment" intended to broaden the scope of the compensation statute to include as compensable an injury not attributable to the working environment provided it was incurred in the course of employment.

*Giant Food, Inc. v. Gooch,* 245 Md. at 165, 225 A.2d 431.

In *Edgewood Nursing Home v. Maxwell,* the employee was shot by her estranged paramour while she was at work. The employer challenged the compensation award made to her dependent on a number of grounds. First, the employer averred that the provision allowing for recovery for an injury inflicted by a third party was unconstitutional because it permitted an award even though the employee's death "was not causally connected with her employment, and was in no sense due to inherent conditions of her work." Reviewing its decision in *Gooch* and citing to other cases, the Court of Appeals rejected the employer's challenge and concluded that the injury was compensable:

We think the employer's obligation under § 67(6) to pay compensation on behalf of an employee injured in the course of his employment by the wilful or negligent act of a third party does rest upon the employer-employee relationship. The injury is work-related in the sense that even though it arose for personal reasons not attributable to the working environment, it occurred within the course of employment on the employer's premises at a time when the employee was obliged to be present and at work; in other words, the employee's presence at the nursing home when the peril struck was a necessary part of her employment and the injury was inflicted in the course of that employment. In view of this nexus, and because the appellants have failed to carry the burden of establishing the invalidity of § 67(6), we think the strong presumption of constitutionality afforded to the statute has not been overcome. It may be that § 67(6) will lead to results unjust to employers in some cases, but if a causal connection between the injury and the employment beyond the requirement that the injury occur in the course

of employment is to be mandated, it can only be done by the legislature.

*Edgewood Nursing Home,* 282 Md. at 430, 384 A.2d 748.

In both *Giant Food, Inc. v. Gooch* and *Edgewood Nursing Home v. Maxwell,* the Court had no difficulty in concluding that the injuries in each case were suffered "in the course of" each employee's employment. Both employees were injured on the premises; one was just preparing for work while the other was killed during working hours.

We conclude that appellant did not suffer an "accidental injury" because the assault was not directed against him in the course of his employment. The injury, tragic as it is, did not occur in the course of appellant's employment. Primarily, appellant's claim is precluded by operation of the "going and coming rule," which takes a claimant's injury out of the course of his or her employment. In general, injuries suffered by an employee traveling on the way to or from his place of employment are not compensable under the Act because they do not arise "out of and in the course of employment." *Bd. of County Comm'rs for Frederick County v. Vache,* 349 Md. 526, 531, 709 A.2d 155 (1998) (citations omitted). The "going and coming rule" embodies this concept and thus

> excludes injuries sustained while traveling to or from a place of employment, as falling outside the "course of employment." Authorities reason that the hazards of such travel are ones to which the public at large is exposed while undertaking personal errands and, thus, should not be compensable under the Workers' Compensation Act. Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook § 6.6 (2d ed.1993); *see also Director of Finance v. Alford,* 270 Md. 355, 359, 311 A.2d 412, 414 (1973) ("Well established, in respect of the application of Workmen's Compensation acts, is the general rule that if an employee is injured while going to work or returning therefrom his injury cannot be said to have arisen out of or in the course of his employment.").

*Montgomery County v. Wade*, 345 Md. at 15 n. 7, 690 A.2d 990. Moreover, another

> reason for the rule is that the workmen's compensation law contemplates an employee engaged in service growing out of his employment. An employee who is merely going to or coming from his work is not rendering any such service. He is therefore exposed to the hazards encountered on such trips, not as an employee, but rather as a member of the general public.

*Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 206, 373 A.2d 613 (1977) (citations omitted).

This rule is subject to certain exceptions in the appropriate case. Chief Judge Robert C. Murphy pointed out for the Court of Appeals:

> Onto this general rule, however, the courts have engrafted several exceptions when compensation benefits may properly be granted. Thus, where the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. *Tavel v. Bechtel Corporation*, 242 Md. 299, 304, 219 A.2d 43 (1966); *Rumple v. Henry H. Meyer Co., Inc.*, 208 Md. 350, 357, 118 A.2d 486 (1955). Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. *Wiley Mfg., supra*, 280 Md. at 206 [373 A.2d 613]; *Proctor–Silex [Corp.] v. DeBrick*, 253 Md. 477, 482, 252 A.2d 800 (1969). The "proximity" exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. *Pariser Bakery v. Koontz*, 239 Md. 586, 591, 212 A.2d 324 (1965); *see Md. Paper Products Co. v. Judson*, 215 Md. 577, 584–588, 139 A.2d 219 (1958). Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable. *Reisinger–Siehler Co. v. Perry*, 165 Md. 191, 199, 167

A. 51 (1933); *see Dir. of Finance v. Alford*, 270 Md. 355, 359–364, 311 A.2d 412 (1973).

*Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572 (1993). A single exception is relevant in the case before us, viz. the "proximity" or "special hazard" exception. Upon review of the record, however, we conclude that the "special hazard" exception to the going and coming rule does not apply.

In *Frederick County v. Vache*, the Court elaborated on the proximity rule or exception:

> We have said the proximity rule has two components, both of which must be satisfied in order for the rule to apply. The first component is "the presence of a special hazard at the particular off-premises point." ... The second component "is the close association of the access route with the premises." With regard to the first component, we have described this special hazard as a "peculiar and abnormal exposure to a common peril beyond that to which the general public was subjected." ... Furthermore, the "gravamen of the rule" is not that the employee was near [his] workplace, but by virtue of [his] proximity to [his] workplace [he] was exposed to a danger peculiarly or to an abnormal degree greater than the degree to which the general public is exposed.

*Frederick County v. Vache*, 349 Md. at 538–39, 709 A.2d 155 (quoting *Wiley Mfg. Co. v. Wilson*, 280 Md. at 208, 215, 373 A.2d 613). As stated by Judge Levine in *Wiley Mfg. Co.*, "the proximity rule is identified with those cases involving accidents which occur at a point where the employee is within range of dangers peculiarly associated with the employment." *Id.*, 280 Md. at 208, 373 A.2d 613 (citing 1 LARSON, THE LAW OF WORKMEN'S COMPENSATION § 15.00 (1972)).

In the case before us, we are unable to conclude that appellant, who was en route to his home when he was shot by Newsome, suffered an "accidental injury" in the course of his employment. Notwithstanding appellant's insistence that his injury need not have "occurred" in the course of employment,

we conclude otherwise. Although the term "occur" is not specified in the Act, we think it clear that the injury must "occur" in the course of employment to be compensable. Again, the Act compensates an injured employee for an "accidental injury ... *occurring* in the course of employment." *Sanchez v. Potomac Abatement, Inc., supra,* 417 Md. at 82 n. 4. *See Livering,* 374 Md. at 576, 823 A.2d 687.

### Delayed Injury & Cases

Numerous are the cases from various jurisdictions that address "delayed injury" cases in which the employee is assaulted some distance from the workplace, but the assault originated at the workplace or in the course of the claimant's employment. One such case, cited by appellant, *Matter of Field v. Charmette Knitted Fabric Company,* 245 N.Y. 139, 156 N.E. 642 (1927), has been "regarded as the grandfather of such cases." *Matter of Malacarne v. City of Yonkers Parking Authority,* 41 N.Y.2d 189, 391 N.Y.S.2d 402, 359 N.E.2d 992, 996 (1976). In *Field,* the company general manager and superintendent, Mr. Field, discharged an employee, Magid, for performing unsatisfactory work. When Field ordered Magid off the premises, an argument followed. After intervention by other employees, Magid left. "A few minutes later, Field went downstairs and out of the building." Magid was waiting and, after challenging Field, struck the latter in the face, causing Field to fall and suffer a fatal head injury. The New York Court of Appeals upheld the award. Justice Cardozo explained:

> Our decisions make it plain that the injury to Field was one that might fairly be found by the triers of the facts to have arisen "out of" the employment (Workmen's Comp. Act; Cons.Laws, ch. 67, § 2, subd. 7).[8] Magid was the aggressor in an assault provoked by the discharge and the

---

8. At the time this case was decided, the New York Workmen's Compensation Act defined "Injury" and "personal injury" to "mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." N.Y. Workmen's Compensation Law § 2(7) (1922).

ensuing war of words (*Matter of Rydeen v. Monarch Furniture Co.*, 240 N.Y. 295 [148 N.E. 527 (1925)]; *Matter of Knocks v. Metal Packing Corp.*, 231 N.Y. 78 [131 N.E. 741 (1921)]; *Matter of Fried v. Quinlan, Inc.*, 242 N.Y. 496 [152 N.E. 399 (1926)]; *Matter of Verschleiser v. Stern & Son*, 229 N.Y. 192 [128 N.E. 126 (1920)]; *cf. Zygmuntowicz v. Am. Steel & Wire Co.*, 240 Mass. 421, 424 [134 N.E. 385 (1922)]). The argument is made, however, that the injury did not arise "in the course of employment" (Workmen's Comp. Act, § 2, subd. 7), for the reason that Field, after finishing the work of the day, had left the premises or plant (§ 2, subd. 4), and was out upon the public sidewalk. If he had been struck within the threshold, liability would be conceded. Because he was struck without, liability has failed.

We think the line of division is drawn too narrowly and closely when circumstances of place are thus considered to the exclusion of all others. The quarrel outside of the mill was merely a continuation or extension of the quarrel begun within. Magid, pulled away from his enemy indoors, was waiting for his vengeance at the gate, and took it on the instant. The rule is well settled that an employee, even after closing time, is in the course of employment until a suitable opportunity has been given to leave the place of work (*Matter of Lynch v. City of New York*, 242 N.Y. 115, 118 [151 N.E. 149 (1926)]). For that reason, claims have been sustained for injuries on stairs or in elevators though the stairs or the elevators were not controlled by the employer, a tenant of a loft above (*Matter of Ross v. Howieson*, 232 N.Y. 604 [134 N.E. 589 (1922)], reversing 198 App. Div. 674 [191 N.Y.S. 276 (1921)], on the dissenting opinion in that court; *Martin v. Met. Life Ins. Co.*, 197 App. Div. 382 [189 N.Y.S. 467 (1921)], 233 N.Y. 653 [135 N.E. 956 (1922)]; *Sundine's Case*, 218 Mass. 1 [105 N.E. 433 (1914)]). Here, almost in the very act of putting his foot without the mill, the employee is confronted by a danger engendered by his work within. The situation would be hardly different if a struggle, begun back of the threshold,

had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers. Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one.

*Matter of Field,* 156 N.E. at 643.

In *Nat'l Union Fire Ins. Co. v. Britton,* 187 F.Supp. 359 (D.D.C.1960), *aff'd,* 289 F.2d 454 (D.C.Cir.), *cert. denied,* 368 U.S. 832, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961), the United States District Court for the District of Columbia upheld a compensation award based on the murder of a pharmacy employee by a patron who had been ejected from the store. After the employee left the store and started to walk down the street, the assailant shot him. The district court observed that, "[i]n its ultimate analysis the question is whether on one hand the injury arose out of and in the course of the employment, or was caused by the wilful act of a third person directed against the employee because of his employment; or whether, on the other hand, it was sustained in a personal quarrel or conflict independent of the employment." *Britton,* 187 F.Supp. at 362 (footnote omitted). The court upheld, as supported by substantial evidence, the administrator's finding that the altercation grew out of the performance of the decedent's duties. *Id.,* 187 F.Supp. at 362. The applicable statute in *Britton* defined "injury" as

> The term "injury" means accidental injury or death arising out of and in the course of employment . . . and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

Section 2(2) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 902(2).[9]

---

**9.** At the time of the decision in *Nat'l Union Fire Ins. Co. v. Britton,* 187 F.Supp. 359 (D.D.C.1960), *aff'd,* 289 F.2d 454 (D.C.Cir.), *cert. denied,* 368 U.S. 832, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961), workers' compensation claims were evaluated under the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. §§ 901–950 (LHWA), because the District

In *Travis Creek Fuel Co. v. Maggard,* 293 S.W.2d 720 (Ky.1956), the deceased employee, Mr. Maggard, a truck driver, discovered sugar in the fuel tank of his truck. He suspected a man named Heffner, the representative of the lessor of the mine from which coal was being hauled. Maggard reported this to his employer and a warrant was issued for Heffner's arrest. While on his way to attend Heffner's trial, Maggard was shot by Heffner. The Kentucky Supreme Court affirmed an award of compensation benefits to the decedent's widow. The court explained:

> It is appellant's contention that the claimant failed to sustain the burden of proving that the death *arose out of* such employment. We think the governing principle in the assaults by a fellow employee is applicable here. The rule is that if the assault is fairly traceable to an incident of the employment and is not the result of personal grievances unconnected therewith, compensation should be allowed.
>
> There was no showing that there was any prior personal animosity between Maggard and Heffner. The evidence establishes that Heffner bore ill will toward Maggard's employer and a fair inference from the evidence is that this ill will was transferred to Maggard when he swore out the warrant. In prosecuting Heffner, Maggard was acting to protect his employer's property and the charge against Heffner certainly arose out of an incident of Maggard's employment. Through a consistent sequence of events, the death of Maggard is clearly traceable to, and likewise arose out of that employment.

*Travis Creek Fuel Co. v. Maggard,* 293 S.W.2d at 721 (citations omitted).

------

of Columbia Workmen's Compensation Act, "adopted the LHWCA as the workmen's compensation law for the District of Columbia." *Potomac Elec. Power Co. v. Dir., OWCP,* 449 U.S. 268, 271 n. 3, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) (citing *Cardillo v. Liberty Mut. Ins. Co.,* 330 U.S. 469, 471, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)). *See Parklands, Inc. v. Dir., OWCP, U.S. Dep't of Labor,* 877 F.2d 1030, 1031 (D.C.Cir.1989). *See also* 45 Stat. 600 (1928); D.C.Code § 36–501 (1951).

In *Augelli v. Rolans Credit Clothing Store,* 33 N.J.Super. 146, 109 A.2d 439 (1954), the claimant was a collector whose job required him to call on his employer's accounts. Part of Augelli's job entailed driving. He used his own vehicle, but the employer was responsible for his expenses. Augelli had a confrontation with another motorist. Four or five weeks later, they encountered each other again when Augelli was calling at another business. An altercation developed and the motorist assaulted Augelli. After Augelli's claim was administratively denied, he appealed and the court awarded him a new trial. The salient issue was whether the passage of four or five weeks removed the effects of the assault from coverage. The New Jersey court answered this question in the negative. The court observed in passing that, had the assault occurred immediately, there would have been "no doubt that . . . the injuries would have been compensable." The court explained that "[s]uch injuries must be considered to have arisen from 'a hazard incident to the use of the highway in the pursuit of the master's business.'" *Id.,* 109 A.2d at 441.

Appellant also cites to *Graybeal v. Supervisors of Montgomery County,* 216 Va. 77, 216 S.E.2d 52 (1975). In *Graybeal,* a prosecutor was injured by a bomb that had been made by a vengeful criminal whom he had prosecuted. The Industrial Commission denied benefits, but the court overturned that decision, holding that an award of compensation benefits was warranted. As later noted by the Virginia intermediate appellate court,

> even though Graybeal was injured in the driveway of his home after working hours, the court indulged a fiction, "[a]n appropriate rule, limited in application," *id.* at 79, 216 S.E.2d at 54, to satisfy the requirement that the injury by accident occurred at a time and place within the employment. Acknowledging that this approach tended "to blend" the "arising out of" and "in the course of" requirements by placing primary emphasis upon the causation of the injury, the court limited application of the rule not only to employees having no fixed time or location of work, but also to injuries which can be directly traced to "an unbroken course

beginning with work and ending with injury under such circumstances that the beginning and end are connected parts of a single work-related incident." *Id.* at 80, 216 S.E.2d at 54. In *Graybeal,* the cause originated at work but manifested itself away from work.

*Virginia Polytechnic Inst. & State Univ. v. Wood,* 5 Va.App. 72, 360 S.E.2d 376, 379 (1987). In commenting on *Graybeal,* the Virginia Court of Appeals has more recently noted that public officers have a status that distinguishes them from most employees:

> Law enforcement officers, as public officials, are distinguishable from ordinary employees in view of the gravity of their responsibilities and range of their discretion.... A law enforcement officer is charged with the public duty of exercising his authority in different places, including his home, and at various times, including evening hours. In *Graybeal v. Board of Supervisors of Montgomery County,* 216 Va. 77, 216 S.E.2d 52 (1975), the Supreme Court recognized the "atypical circumstances" of a public officer who is involved in law enforcement.... By virtue of her employment, Thore was in a unique position and had a special responsibility to her employer.

*Thore v. Chesterfield County Bd. of Supervisors,* 10 Va.App. 327, 391 S.E.2d 882, 885 (1990).

### Toxic Coworkers

Citing numerous cases from other jurisdictions, appellant contends that Gardner was a workplace threat and suggests that her presence constituted a hazard.[10] We are not persuaded, because we consider the authorities cited by appellant to be inapposite.

---

**10.** Appellant maintains that "Gardner's workplace threat placed Appellant in a zone of danger that increased when her conspirator, Newsome, arrived at the workplace premises. When Newsome arrived at the Hilton with his weapons and gang members, Appellant was subjected to an increased risk of harm. The zone of danger continued to follow Appellant from the time he left the work premises until he was shot." Appellant's Brief at 28–29.

We are mindful that injuries from assaults by a co-worker have been generally held to be compensable in the appropriate case. According to Professor Larson, "[i]f claimant is assaulted by a co-employee who becomes irresponsible because of insanity, the great majority of decisions hold that the injury arose out of the employment, and it is immaterial whether or not the employer had knowledge of the assailant's condition or propensities." LARSON, WORKERS' COMPENSATION LAW § 8.03[2][a] at 8–62 (collecting cases) (footnote omitted). One of the more notable cases was decided by the Connecticut Supreme Court, which observed:

It is, of course, immaterial in this proceeding whether or not the defendant was at fault. Under the Act a contract existed between the plaintiff and the defendant whereby it agreed to compensate the plaintiff for any injury "arising out of and in the course of his employment," independent of the question of its fault. *Powers v. Hotel Bond Co.,* 89 Conn. 143, 145, 93 A. 245 [ (1915) ]. When an employer puts an employee at work on a machine—although the employer may have exercised all reasonable care to provide that it is safe—which, without fault on his part, has a latent defect which causes it to break down and injure the employee, the injury is unquestionably one arising out of a condition of his employment. It is immaterial, under the Act, whether the employer knew or ought to have known of the existence of the dangerous condition. So where a fellow servant by his negligence injures another employee, compensation is due for the injury, since it arose from a condition of the employment, to wit, the possibility of such negligence of a fellow servant.

The knowledge of the employer as to the liability of the fellow servant to be negligent is immaterial. Such liability is a condition attending the employment.

The situation here presented of an insane man running amuck, is in no way analogous to a case where a fellow employee assaults another employee solely to gratify his feeling of anger or hatred; in such case "the injury results from the voluntary act of the assailant and cannot be said to

arise either directly out of the employment, or as an incident of it." *Jacquemin v. Turner & Seymour Mfg. Co.*, 92 Conn. 382, 384, 103 A. 115 [ (1918) ]. Whenever an employer puts his employees at work with fellow servants, the conditions actually existing—apart from the possibility of wilful assaults by a fellow servant independent of the employment—which result in injury to a fellow employee, are a basis for compensation under the implied contract of that Act. So in this case, although the employer may not have had knowledge actual or constructive that Markus, a fellow servant of the plaintiff, was insane and liable to run amuck, yet such liability of Markus to run amuck was in fact a condition under which the plaintiff was employed on the night in question, and if such condition of Markus caused an injury to the plaintiff, as it did, then the injury to the plaintiff arose out of his employment as truly as if it had arisen from the negligence of Markus in doing his work. "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on." *Marchiatello v. Lynch Realty Co.*, 94 Conn. 260, 263, 108 A. 799 (1919).

*Anderson v. The Sec. Bldg. Co.*, 100 Conn. 373, 123 A. 843, 844–845 (1924). *See also, e.g., Pacific Employer's Ins. Co. v. Indus. Accident Comm'n*, 139 Cal.App.2d 260, 293 P.2d 502 (1956) (delusional employee shot fellow employee at workplace).

The decision by this Court in *Jennifer v. Dep't of Public Safety & Corr. Servs., supra,* is instructive. This is a case wherein the claimant's remedy at law was precluded by the application of a statute analogous to the Worker's Compensation Act. The claimant, Jennifer, was an inmate who was assaulted by a fellow prisoner, one Taylor, who struck Jennifer with a "large spatula" while both were working in a Department of Corrections kitchen. He filed a lawsuit against

Taylor for battery and intentional infliction of emotional distress, and also included a count against the State of Maryland alleging a violation of Article 25 of the Maryland Declaration of Rights.[11] The circuit court entered a default judgment against Taylor, but granted summary judgment in favor of the State. The court reasoned that Jennifer's exclusive remedy against the State would lay with the Sundry Claims Board. *See* Md.Code (1999, 2008 Repl.Vol.), §§ 10–301–310 of the Correctional Services Article. We affirmed.

After reviewing similarities between the Sundry Claims provisions of the Correctional Services Article and the Worker's Compensation Act, we concluded that Jennifer's injury was compensable because it arose out of his employment.[12] Speaking through Chief Judge Krauser, we explained why Jennifer's injury arose out of his employment:

> Certainly, he would not have suffered the injury he did "but for the fact that the conditions and obligations of the employment placed [him] in the position where he was injured." .... At the time the assault took place, Jennifer was required by his employer, the Central Laundry Facility, to be in the kitchen. His presence there provided Taylor, who had also been assigned to work in the kitchen that day, with the opportunity to assault him as well as the instrument with which to carry out that attack. Thus, Jennifer's injury was incidental to his work. Because a "reasonably incidental" relationship between the injury and the claimant's work is sufficient, in itself, to establish that an injury arose out of employment, we conclude that Jennifer's injury satisfied that requirement.

Although Jennifer appears to concede this very point, he claims that the assault was motivated by Taylor's animosity

---

**11.** Article 25 of the Maryland Declaration of Rights prohibits cruel and unusual punishment. It provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law."

**12.** Jennifer did not dispute that his injury occurred in the course of his employment.

toward him and that it therefore "could have occurred anywhere." Relying on *Gray v. Dept. of Correction*, 230 Md. 508, 187 A.2d 860 (1963), Jennifer argues that his injury did not arise out of his employment. In *Gray,* a prisoner was injured under what Jennifer claims were analogous circumstances: that is, as a result of being assaulted while working in the laundry at a Maryland penitentiary. Because the *Gray* Court found that the prisoner's injuries did not "arise out of" his work, we must, Jennifer claims, reach the same result here.

But, apart from the fact that in both *Gray* and the instant case the claimant and his assailant were inmates at a Maryland prison when the claimant was injured, the two cases have few material facts in common. Indeed, in rejecting recovery under the Sundry Board Claims Act, the *Gray* Court stressed that "a clear inference" could be drawn from the evidence "that [the prisoner] was injured as the result of a fight with another inmate" that had previously occurred outside of work and in "retaliation for a homosexual advance by [the injured prisoner]." *Id.* at 512, 187 A.2d 860. In contrast, Jennifer has offered no basis from which an inference may be drawn that his injury was the product of a prior confrontation unrelated to his work activity.

Indeed, the only explanation Jennifer offers in his complaint for the assault was that Taylor was "under care by [the State] for mental health problems," relating to his "violent disposition"; that he had exhausted the medication he was taking for that problem; and that the State had failed to provide him with additional medication to keep his "propensity for violent outbursts" in check. There is no suggestion in the complaint that the attack had anything to do with any prior relationship or confrontation with Taylor. And, although Jennifer suggests in his brief, as he did in his unsuccessful opposition to the State's motion for summary judgment, that Taylor's assault was motivated by animus, he offers no explanation or basis for this bald accusation. Hence, *Gray* has no applicability here.

*Jennifer,* 176 Md.App. at 223–24, 932 A.2d 1213 (certain citations omitted). Viewing cases in which the personal animosity between employees precluded a finding that a claimant's injury arose from employment, we observed that Taylor's attack was " 'generated by friction inseparable from [their] working conditions,' specifically, the friction caused by the prison official ordering Taylor to serve his co-worker, Jennifer, a hamburger[.]" *Id.* The assault had not been triggered by an antecedent quarrel. *Id.*

### Conclusion

In the final analysis, we believe that these cases and additional authority cited by appellant, are inapposite. In the majority of cases of "delayed injury," for example, the nature of the employee's work prompted the assailants to act. An assailant may have been a former criminal defendant, a person who was discharged, someone who had been ejected from the claimant's place of business, a lunatic who felt aggrieved by actions taken in the employer's name and for its purposes, or criminals who sought to rob the claimant of items belonging to the employer. Those cases involving demonstrably insane or delusional coworkers are likewise distinguishable, in that the assaults largely took place near or at the place of the injured worker's employment. *Jennifer* is an excellent case in point.

We have held that appellant's injury did not arise out of his employment. That is not required in any event for a claim under LE § 9–101(b)(2) and, even assuming that the injury arose out of his employment, appellant's injury did not occur in the course thereof. The time, place and circumstances of the injury in relation to his work indicate that the tragic wounds he suffered were not within the range of dangers associated with his employment, especially because appellant's claim is subject to the "going and coming rule." On this record, we are unable to conclude that the fact that he had the misfortune to work with Gardner does not, on this record, constitute a hazard at the workplace that would mitigate the effect of that rule and justify defining appellant's injuries as occurring in the course thereof.

**JUDGMENT AFFIRMED.**

**EACH PARTY TO BEAR ITS OWN COSTS.**[13]

Dissenting Opinion by MEREDITH, J.

MEREDITH, J., dissenting.

Section 9–101(b) of the Labor & Employment Article ("LE") of the Maryland Code (1991, 2008 Repl.Vol.), defines an "accidental personal injury" to include "an injury caused by a willful ... act of a third person directed against a covered employee in the course of the employment of the covered employee." Pursuant to LE § 9–102(a), this statutory definition of an accidental personal injury is to be construed to carry out the general purpose of the Maryland Workers' Compensation Act. We have previously noted that the general purpose of that act is a remedial one which favors compensation of injured workers. In *Anderson v. Montgomery County,* 192 Md.App. 343, 352–53, 994 A.2d 507, *cert. granted,* 1 A.3d 467, 415 Md. 337 (2010), we observed:

> The Court of Appeals has stated that the Workers' Compensation Act is a remedial statute, and as such, it " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant.' " *Design Kitchen v. Lagos,* 388 Md. 718, 724 [882 A.2d 817] (2005) (quoting *Harris v. Board of Education,* 375 Md. 21, 57 [825 A.2d 365] (2003)). Even though LE § 9–102 does not expressly mandate construing the statute in a manner that favors injured employees, § 9–102(a) nevertheless states: "This title shall be construed to carry out its general purpose."

---

**13.** We exercise our discretion not to award costs in this case. Appellees have appended to their brief a massive text of provisions from various compensation statutes from other jurisdictions. The Appendix to their brief consists of sixty pages, most of which are not relevant and were not helpful. It would have sufficed to set forth the specific statutory definitions of "injury" in effect at the relevant times. We shall not pass the costs of this effort to appellant.

We discussed the general purpose of the act in *Simmons v. Comfort Suites Hotel,* 185 Md.App. 203, 216 [968 A.2d 1123] (2009), where we stated:

The purpose of the Act was

"to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Howard Co. Ass'n. Retard. Cit. v. Walls,* 288 Md. 526, 531, 418 A.2d 1210 (1980), and "to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944).

*Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 474, 784 A.2d 569 (2001).

In *Breitenbach,* the Court of Appeals stated that, when interpreting the Maryland Workers' Compensation Act, a court should keep in mind that "the Act is remedial in nature and 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" *Id.* at 472, 784 A.2d 569 (quoting *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737 (1995)). "[A]pplying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant." *Id.* at 473, 784 A.2d 569. The Court cautioned, however, that it "may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail.... Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." *Id.*

Given the remedial purpose of the Workers' Compensation Act, I would construe LE § 9–101(b) to include within the

scope of compensable accidental injuries an injury that occurs under the unusual circumstances of this case, in which (1) two co-employees became involved in an argument at their place of employment; (2) the source of the argument and the subject of the argument was specifically related to the manner in which the two employees were performing their jobs; (3) one of the employees made a phone call from her place of employment, during her work shift, asking another person to come to the place of employment to willfully inflict injuries upon the co-worker; (4) the recipient of the phone call did come to the place of employment; and (5) the recipient of the phone call and the calling employee spotted the target employee at the end of his shift as he was leaving the place of employment, and then followed that employee without interruption until they were able to willfully inflict personal injuries upon him. Under such circumstances, I would conclude that there is such a clear nexus to the employment and the workplace that the Commission correctly ruled that the claimant's injuries arose out of his employment, and were "caused by a willful ... act of a third person directed against a covered employee in the course of the employment of the covered employee," within the scope of LE § 9–101(b). Accordingly, I would reverse the judgment of the circuit court.